IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GILEAD SCIENCES, INC., *et al.*,    )
         )
    *Plaintiffs*,    )
         )   Case No. 24-CV-3566-JRR
v.    )
         )
MERITAIN HEALTH, INC., *et al.*,    )
         )
    *Defendants*.    )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GREGORY SANTULLI'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

1

## TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................................... 1

II.    FACTUAL ALLEGATIONS ....................................................................................... 2

    A.     Plaintiffs' claims at issue. ............................................................................... 2

    B.     Plaintiffs' jurisdictional allegations. ............................................................... 2

    C.     Background facts illustrating Mr. Santulli's lack of connection to Maryland and the claims at issue. ............................................................................................... 3

III.   LEGAL STANDARD ................................................................................................. 5

IV.    ARGUMENT ............................................................................................................. 6

    A.     Plaintiffs Cannot Meet Their Burden of Establishing General Jurisdiction Because Mr. Santulli Is Not "At Home" in Maryland. ................................................... 6

    B.     Plaintiffs Cannot Meet Their Burden of Establishing Specific Jurisdiction Because Their Claims Do Not Arise Out of or Relate to Contacts formed by Mr. Santulli with Maryland. ......................................................................................................... 6

        1.     Maryland's long-arm statute is not satisfied as to Mr. Santulli. ............................. 6

        2.     Constitutional due process is not satisfied as to Mr. Santulli. ............................... 7

        3.     Mr. Santulli is not subject to personal jurisdiction in his capacity as an officer of Rx Valet and Advanced Pharmacy. ....................................................................... 9

CONCLUSION ................................................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
293 F.3d 707 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105, 123 S.Ct. 868, 154
L.Ed.2d 773 (2003) ..................................................................................................7

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*,
334 F.3d 390 (4th Cir. 2003) ................................................................................5, 6

*Columbia Briargate Co. v. First Nat'l Bank in Dallas*,
713 F.2d 1052 (4th Cir. 1983) ................................................................................10

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ..................................................................................................6

*ESAB Grp., Inc. v. Zurich Ins. PLC*,
685 F.3d 376 (4th Cir. 2012) ....................................................................................5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) ..............................................................................................6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ..................................................................................................6

*Hart v. Carver*,
No. 1:23-CV-03499-JRR, 2024 WL 4025837 (D. Md. Sept. 3, 2024) .....................6

*Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tec. Fin. Grp.*,
299 F. Supp. 2d 505 (D. Md. 2004) .......................................................................10

*Hawkins v. i-TV Digitalis Tavkozlesi zrt.*,
935 F.3d 211 (4th Cir. 2019) ....................................................................................5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ..................................................................................................5

*International Shoe v. Washington*,
326 U.S. 310 (1945) ..................................................................................................5

*Macher v. Netflix, Inc.*,
684 F. Supp. 3d 509 (W.D. Va. 2023) ......................................................................9

*Mylan Labs., Inc. v. Akzo, N.V.*,
2 F.3d 56 (4th Cir. 1993) ..........................................................................................5

ii

*National Fire & Marine Ins. Co. v. Advanced Lighting Technologies, LLC*,
    No. 2023 WL 6142988 (D. Md. Sept. 20, 2023) ................................................................10

*Newport News Holdings Corp. v. Virtual City Vision, Inc.*,
    650 F.3d 423 (4th Cir. 2011) ......................................................................................10, 11

*Pandit v. Pandit*,
    808 F. App'x 179 (4th Cir. 2020) ......................................................................................6

*Schultz v. Komori Corp.*,
    No. CV 23-3001-BAH, 2025 WL 675008 (D. Md. Feb. 28, 2025)........................................10

*State v. Exxon Mobil*,
    406 F. Supp. ......................................................................................................................11

*Tang v. Altimmune, Inc.*,
    No. CV DLB-21-3283, 2023 WL 2648795 (D. Md. Mar. 24, 2023) .......................................9

*Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC*,
    241 F. Supp. 3d 708 (E.D. Va. 2017) ...................................................................................9

*Transcontinental Ins. Co. v. Eastern Steel Constructors Inc.*,
    No. CCB-07-2243, 2008 WL 2466558 (D. Md. June 10, 2008) .............................................7

*United Cutlery Corp. v. NFZ, Inc.*,
    No. CIV. CCB-03-1723, 2003 WL 22851946 (D. Md. Dec. 1, 2003) .....................................9

*Universal Leather, LLC v. Koro AR, S.A.*,
    773 F.3d 553 (4th Cir. 2014) .................................................................................................5

*Yacht Basin Provision Co. v. Bates*,
    610 F. Supp. 3d 800 (E.D.N.C. 2022)...................................................................................9

*Zaletel v. Prisma Labs, Inc.*,
    226 F. Supp. 3d 599 (E.D. Va. 2016) ...................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(2)..........................................................................................................1

iii

Defendant Gregory Santulli, through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(2), respectfully submits this Memorandum of Law in Support of his Motion to Dismiss, and in support thereof states as follows:

## I.    INTRODUCTION

Plaintiffs in this case are prescription drug manufacturers who allege that their registered trademarks have been infringed upon by the defendants. The named defendants include corporate entities that are providing needed, lower cost pharmacy fulfillment services to American consumers and an individual corporate officer – Gregory Santulli.

Mr. Santulli is a Georgia resident. He is not "at home" in Maryland and is therefore not subject to the general jurisdiction of Maryland courts. He has not taken any action in or directed to the State of Maryland related to the matters at issue in this suit and is therefore not subject to specific jurisdiction in this case.  Under black letter law, the fact that Mr. Santulli has an ownership interest in the defendant corporate entities is not constitutionally sufficient to justify the exercise of personal jurisdiction over him.

It is well established that Plaintiffs bear the burden of proof on the issue of personal jurisdiction. Plaintiffs' jurisdictional allegations are boilerplate and conclusory. Plaintiffs have alleged no facts in their complaint that, if true, would establish that Mr. Santulli is subject to the jurisdiction of this Court. Further, the instant motion is supported by admissible evidence establishing that personal jurisdiction is lacking, and no amendment to the Complaint could cure Plaintiffs' failure to plead jurisdictional facts. Accordingly, Mr. Santulli should be dismissed for lack of personal jurisdiction.

## II.    FACTUAL ALLEGATIONS

### A.  Plaintiffs' claims at issue.

Plaintiffs are prescription drug manufacturers who collectively own various registered trademarks associated with Plaintiffs' prescription drugs. *See generally* (ECF No. 1 at pp. 6–7, ¶¶ 22–30). Plaintiffs allege that Defendants are part of a scheme designed to force American patients to fill U.S. prescriptions with non-FDA-approved and illegally imported prescription drugs. (*Id.* at p. 2, ¶ 1).

In support of their claims, Plaintiffs allege that a John Doe patient in Maryland was prescribed the Gilead drug BIKTARVY® at a Maryland clinic in February 2024 and that the prescription was shipped to him from a retail pharmacy in Istanbul, Turkey through the following chain of events: (1) the pharmacy benefit manager for his insurance company (Defendant ProAct, Inc.) instructed him to fill his BIKTARVY® prescription through Defendant Rx Valet; (2) Defendant Rx Valet instructed the John Doe patient to send his prescription to Defendant Advanced Pharmacy; (3) Defendant Advanced Pharmacy forwarded the prescription to Defendant Affordable Rx; and (4) Defendant Affordable Rx referred the prescription to a foreign contracted pharmacy.

Plaintiffs assert claims for trademark infringement, unfair competition, unjust enrichment, importation of goods bearing infringing marks, and civil conspiracy. Plaintiffs are seeking immediate injunctive relief on their trademark infringement claims.

### B.  Plaintiffs' jurisdictional allegations.

Plaintiffs' jurisdictional allegations are set forth in Paragraph 19 of their Complaint. Plaintiffs' jurisdictional allegations are lodged generically against all defendants, reciting the

boilerplate elements of Maryland's long-arm statute in conclusory fashion with no supporting facts, as follows:

> Defendants "(i) transact[s] business in Maryland; (ii) contract[s] to supply goods, food, services, or manufactured products in Maryland; (iii) caused tortious injury in Maryland by an act or omission in Maryland; and (iv) caused tortious injury in Maryland by an act or omission outside of Maryland, and regularly do[es] or solicit[s] business, engage[s] in other persistent conduct in Maryland, or derive[s] substantial revenue from goods, food, services, or manufactured products used or consumed in Maryland."

(ECF No. 1 at pp. 6–7, ¶ 19).

In support of their claims against Mr. Santulli specifically, Plaintiffs additionally allege that "[a]s the founder and CEO of Rx Valet and the President of Advanced Pharmacy, Santulli is intimately involved in Rx Valet and Advanced Pharmacy's efforts to import international prescription drugs. Santulli directs, approves, and supervises both companies' advertising, sales, and importation of infringing Gilead-branded medicines. He controls both companies and is an active and moving force behind both companies' infringement. Santulli directly financially benefits from his companies' infringement."  (ECF No. 1 at p. 17, ¶ 75). Plaintiffs do not allege that Mr. Santulli personally engaged in any activity in or directed to the State of Maryland specifically.

### C.  Background facts illustrating Mr. Santulli's lack of connection to Maryland and the claims at issue.

Mr. Santulli is a resident and citizen of Georgia, which Plaintiffs concede. (ECF No. 1, at ¶ 16; Exhibit A, Santulli Decl., at ¶ 4). Mr. Santulli's driver's license is issued by the State of Georgia.  (*Id*.). Mr. Santulli does not own or lease any property in the State of Maryland. (*Id*., at ¶ 5). Mr. Santulli does not pay taxes in the State of Maryland. (*Id*., at ¶ 6).

Mr. Santulli is the founder and CEO of Rx Valet and the President of Advanced Pharmacy, which Plaintiffs concede. (ECF No. 1, at ¶ 16; Exhibit A, Santulli Decl., at ¶ 8, 14).

3

Rx Valet is a Georgia limited liability company that employes approximately forty (40) people, including a five-person leadership team. (Ex. A, Santulli Decl., ¶ 13). Rx Valet has an office in Lawrenceville, Georgia. (*Id*., at ¶ 11). Rx Valet does not have an office in Maryland and does not own or lease any property in Maryland. (*Id*., at ¶ 12). None of Rx Valet's approximately forty employees lives or works in Maryland. (*Id*., at ¶ 13).

Advanced Pharmacy is a South Carolina limited liability company that employes approximately fifteen (15) people. (Ex. A, Santulli Decl., ¶ 19). Advanced Pharmacy has offices located in Greenville, South Carolina and Lawrenceville, Georgia. (*Id*., at ¶ 17). Advanced Pharmacy does not have an office in Maryland and does not own or lease any property in Maryland. (*Id*., at ¶ 18). None of Advanced Pharmacy's approximately fifteen employees live or work in Maryland. (*Id*., at ¶ 19).

As the CEO of Rx Valet and the President of Advanced Pharmacy, Mr. Santulli is familiar with the corporate structure and business operations of both companies. (Ex. A, Santulli Decl., at ¶¶ 9, 15). Both companies maintain corporate formalities and a separate and independent corporate existence. (*Id*. at ¶ 20). Mr. Santulli's personal funds are not commingled with the companies' bank accounts. (*Id*.). Mr. Santulli's personal email accounts are not used for company business. (*Id*.). Mr. Santulli does not control the day-to-day activities of either company. (*Id*., at ¶ 21). He does not contact customers, place or process orders, or personally supervise the day-to-day activities of the company employees who conduct these business operations. (*Id*.).

Mr. Santulli never had any contact with the State of Maryland in connection with the matters at issue in this suit. (Ex. A, Santulli Decl., at ¶ 23). He never personally contacted or had any communications whatsoever with John Doe. (*Id*.). He was not personally involved in

processing the transaction that resulted in shipment to John Doe of a prescription for Gilead brand BIKTARVY®.  (*Id.*).

## III.    LEGAL STANDARD

In its landmark decision, the Supreme Court held in *International Shoe v. Washington*, 326 U.S. 310, 316 (1945), that a state may exercise personal jurisdiction over an out-of-state defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

"A federal district court may exercise personal jurisdiction over a foreign defendant only if: (1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc*., 334 F.3d 390, 397 (4th Cir. 2003) (citing *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012)).

A non-resident defendant's contacts with a forum state can be analyzed under two different approaches to determine if they are sufficient to confer personal jurisdiction: general jurisdiction and specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n. 9 (1984); Carefirst *of Md.*, 334 F.3d at 397.

When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, without an evidentiary hearing, the plaintiff bears the burden of making a prima facie showing that the exercise of jurisdiction over a non-resident defendant is appropriate. *Hawkins v. i-TV Digitalis Tavkozlesi zrt*., 935 F.3d 211, 226 (4th Cir. 2019); *Universal Leather, LLC v. Koro AR, S.A*., 773 F.3d 553, 558 (4th Cir. 2014); *Mylan Labs., Inc. v. Akzo, N.V*., 2 F.3d 56, 62 (4th Cir. 1993) (plaintiff's ultimate burden is by a preponderance of the evidence.)

## IV.    ARGUMENT

### A. Plaintiffs Cannot Meet Their Burden of Establishing General Jurisdiction Because Mr. Santulli Is Not "At Home" in Maryland.

A defendant is subject to a court's general personal jurisdiction only when its contacts are "so constant and pervasive as to render it essentially at home" in the forum. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 925 (2011)); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*., 141 S. Ct. 1017, 1024 (2021).

Here, Plaintiffs correctly allege that Mr. Santulli resides in Georgia. (ECF No. 1, at ¶ 16). Plaintiffs have not alleged a single fact that, if true, could support the conclusion that Mr. Santulli is "at home" in Maryland.  In addition, Mr. Santulli's Motion to Dismiss is supported by admissible evidence establishing that Mr. Santulli has no ongoing or systematic contacts with the State of Maryland. (Ex. A, Santulli Decl., ¶¶ 4-7).

Therefore, general jurisdiction is lacking.

### B. Plaintiffs Cannot Meet Their Burden of Establishing Specific Jurisdiction Because Their Claims Do Not Arise Out of or Relate to Contacts formed by Mr. Santulli with Maryland.

#### 1. *Maryland's long-arm statute is not satisfied as to Mr. Santulli.*

The first step in the jurisdictional analysis is to determine whether the state's long-arm statute confers jurisdiction. In *Pandit v. Pandit*, 808 F. App'x 179, 185 (4th Cir. 2020), the Fourth Circuit recognized that, although Maryland courts have consistently held that the state's long-arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the

Constitution, that does not mean the court may dispense with the requirement of considering the long-arm statute. *Pandit*, 808 F. App'x at 185 (quoting *Carefirst of Md.*, 334 F.3d at 396).

As this Court recognized in *Hart v. Carver*, No. 1:23-CV-03499-JRR, 2024 WL 4025837, at *4 (D. Md. Sept. 3, 2024), Maryland's long-arm statute requires Plaintiffs to identify the section of the long-arm statute on which they rely. Plaintiffs have not done so.

In fact, Plaintiffs have not pled a single fact that, if true, could support a finding that Mr. Santulli personally engaged in any conduct that falls within the ambit of Maryland's long-arm statute. Plaintiffs' jurisdictional allegations as to the long-arm statute are boilerplate and asserted generally as against all defendants collectively. Accordingly, Plaintiffs have failed to meet their burden of proving that Maryland's long-arm statute authorizes the exercise of jurisdiction over Mr. Santulli. The motion should be granted for this reason alone. In addition, Mr. Santulli's motion is supported by admissible, uncontroverted evidence establishing that none of the requirements of Maryland's long-arm statute are satisfied as to him because the claims at issue in this case do not arise from any of the enumerated actions. (Ex. A, Santulli Decl., at ¶¶ 4-7, 23).

### 2. *Constitutional due process is not satisfied as to Mr. Santulli.*

To satisfy constitutional due process, the court must consider (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state or purposefully directed activities toward the state; (2) whether the plaintiffs' claims arise out of those activities of the defendant himself; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002), *cert. denied*, 537 U.S. 1105, 123 S.Ct. 868, 154 L.Ed.2d 773 (2003); *Transcontinental Ins. Co. v. Eastern Steel Constructors Inc.*, No. CCB-07-2243, 2008 WL 2466558, at *4-5 (D. Md. June 10, 2008).

As Plaintiffs bear the burden of proof on the first two elements, the Court need not reach the reasonableness inquiry if the first two elements are not satisfied, as is the case here.

As with the long-arm statute, Plaintiffs have not pled a single fact that, if true, could support a finding that (1) Mr. Santulli purposefully availed himself of the privilege of doing business in Maryland or personally directed conduct at the State of Maryland, or (2) Plaintiffs' claims arose out of or related to such contacts personally formed by Mr. Santulli with the State of Maryland.

In support of their application for a temporary restraining order, Plaintiffs argued that Mr. Santulli could be held personally liable for trademark infringement because he was, allegedly, a "moving, active, conscious force" behind the infringing activity, relying on four cases. ((ECF No. 11-1 at page 49 of 67). [1] At this stage of the proceeding, the Court must evaluate Mr. Santulli's jurisdictional contacts with the State of Maryland, not the merits of Plaintiffs' claims. Only one of those cases – *Matsunoki Group* – addresses personal jurisdiction.

In *Matsunoki Group*, (N.D. Cal. 2009), the plaintiff argued that the two individual defendants were subject to the court's jurisdiction because their employer (Timberwork) consented to personal jurisdiction in the forum or alternatively under an agency or alter ego theory. The court found that one of the two individual defendants was subject to personal jurisdiction because the plaintiff had submitted evidence that he (Blondheim) was the moving, active, conscious force behind infringing activities in the forum state of California – evidence including that the defendant admitted that ***he personally*** sold materials to companies and individuals ***in California*** and built several residences ***in California*** including the very residence at issue in the case. *Id*. Even if the decision were controlling here, which it is not, the facts are readily distinguishable. By contrast to

---

[1] Subject to and without waiver of his personal jurisdiction defense, Mr. Santulli denies liability and preserves all arguments and defenses in that regard, which will be addressed separately at the appropriate time in compliance with the Court's Orders.

*Matsunoki Group*, where the defendant admitted engaging in suit-related conduct in the forum state of California, here, Mr. Santulli denies taking a single action in or directed to the forum state of Maryland related to this case, and Plaintiffs do not allege otherwise.

Courts in the Fourth Circuit have repeatedly made clear – consistent with U.S. Supreme Court precedent – that (1) the issue of personal jurisdiction must be decided based upon the actions of the defendant himself and not the actions of others and (2) the contacts must be substantial and with the forum state specifically, not merely with an individual residing in the forum state. *See e.g. Tang v. Altimmune, Inc.,* No. CV DLB-21-3283, 2023 WL 2648795, at *6 (D. Md. Mar. 24, 2023); *Yacht Basin Provision Co. v. Bates*, 610 F. Supp. 3d 800, 816 (E.D.N.C. 2022); *Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC*, 241 F. Supp. 3d 708, 721 (E.D. Va. 2017). The analysis does not change when the claim alleged is trademark infringement. *See e.g. Macher v. Netflix, Inc*., 684 F. Supp. 3d 509, 516 (W.D. Va. 2023); *Zaletel v. Prisma Labs, Inc*., 226 F. Supp. 3d 599, 606 (E.D. Va. 2016); *United Cutlery Corp. v. NFZ, Inc*., No. CIV. CCB-03-1723, 2003 WL 22851946, at *5 (D. Md. Dec. 1, 2003).

In addition to Plaintiffs failing to allege any facts establishing the requisite connection between Mr. Santulli and the State of Maryland, Mr. Santulli's Motion to Dismiss is supported by admissible, uncontroverted evidence establishing that he did not form any contacts with Maryland related in any way to the claims asserted in this suit. (Ex. A, Santulli Decl., ¶ 21, 23.) Accordingly, constitutional due process is not satisfied, and Mr. Santulli should be dismissed for lack of personal jurisdiction.

> 3.  *Mr. Santulli is not subject to personal jurisdiction in his capacity as an officer of Rx Valet and Advanced Pharmacy.*

In their motion for injunctive relief, Plaintiffs alternatively argued that Mr. Santulli is vicariously liable for the actions of his company. (ECF No. 11-1 at page 49 of 67, n. 10.) Again,

the merits of Plaintiffs' claims are not at issue here, where the question before the Court is whether Mr. Santulli himself formed sufficient minimum contacts with the State of Maryland to satisfy due process.

In *Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1064 (4th Cir. 1983), the Fourth Circuit held that a corporate agent's status within the company does not, by itself, establish jurisdiction over that individual. The Fourth Circuit has also recognized that a court may exercise personal jurisdiction over an individual who would ordinarily not be subject to personal jurisdiction in that court if the individual is an alter ego of a corporation that would be subject to personal jurisdiction in that court. *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 433 (4th Cir. 2011). The question of whether the individual can be considered the "alter ego" of the corporation for jurisdictional purposes is determined by Maryland state law. *Id*.

"Maryland generally is more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil, and courts do so only where necessary to prevent fraud or to enforce a paramount inequity." *National Fire & Marine Ins. Co. v. Advanced Lighting Technologies, LLC*, No. 2023 WL 6142988 (D. Md. Sept. 20, 2023); *see also Schultz v. Komori Corp.*, No. CV 23-3001-BAH, 2025 WL 675008, at *5 (D. Md. Feb. 28, 2025) (citing *Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tec. Fin. Grp.*, 299 F. Supp. 2d 505, 514 (D. Md. 2004).) Under Maryland law, a court may pierce the corporate veil to find that an individual is the alter ego of a corporation only if it finds that the shareholder exerts considerable control over the activities of the corporation, considering various factors such as whether separate books and records are maintained and whether accounts are commingled. *State x. Exxon Mobil Corp.*, 406 F. Supp.3d 420 (D. Md. 2019). Such facts do not exist here.

10

Unlike in *Newport News*, where the Fourth Circuit affirmed the district court's finding under Virginia law that the individual defendant was the alter ego of the corporate defendant, here, the hallmarks of corporate separateness are indisputable. In *Newport News*, the individual defendant was the sole employee of the company, which he ran out of his home. By contrast here, Rx Valet has approximately forty employees, including a five-personal leadership team, and Advanced Pharmacy has approximately fifteen employees, including a licensed pharmacist. (Ex. A, Santulli Decl., ¶¶ 13, 19). The corporations' bank accounts, physical offices, and records are separate and independent from Mr. Santulli's bank accounts, records, and personal residence. (*Id.*, at ¶¶ 20, 21). As the CEO of Rx Valet and President of Advanced Pharmacy, it is to be expected that Mr. Santulli was involved in managing the affairs of those companies, but Plaintiffs do not allege facts that, if true, would support the legal standard necessary to pierce the corporate veil for jurisdictional purposes. Plaintiffs alleged no such facts in their Complaint and the evidence submitted herewith establishes that the contacts of the corporate defendants cannot be imputed to Mr. Santulli for jurisdictional purposes – even if there were relevant contacts with Maryland to impute, which there are not. (*See* Ex. A).

It is well settled that "[a] corporation exists as a legal entity separate and distinct from its corporate shareholders." *State v. Exxon Mobil*, 406 F. Supp.3d at 446. It would violate constitutional due process to hold Mr. Santulli subject to personal jurisdiction in Maryland simply because of his role as an officer of the corporate defendants when he did not personally take a single action in or directed to the State of Maryland having anything to do with the claims at issue in this suit.

**CONCLUSION**

For the reasons set forth above, Gregory Santulli respectfully request that this Court grant

his Motion and dismiss him from this action for lack of personal jurisdiction.

Respectfully submitted,

Date: <u>March 13, 2025</u>                    <u>/s/ Michael Blumenfeld</u>

Michael E. Blumenfeld (Bar No. 25062)
Nelson Mullins Riley & Scarborough LLP
100 S. Charles Street, Suite 1600
Baltimore, Maryland 21201
Phone: 443.392.9402
Fax: 410.392.9499
michael.blumenfeld@nelsonmullins.com

Rachel Atkin Hedley, *pro hac vice*
*application forthcoming*
SC Bar No. 16941
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, Suite 1700
Columbia, South Carolina 29201
Telephone: (803) 255-5565
Facsimile: (803) 256-7500
rachel.hedley@nelsonmullins.com

Michael P Beltran, *pro hac vice*
Fla. Bar No. 0093184
Beltran Litigation, P.A.
4920 West Cypress St.
Suite 104 PMB 5089
Tampa, FL 33607
813-870-3073 (o)
mike@beltranlitigation.com

*Attorneys for Rx Valet, LLC; Advanced*
*Pharmacy, LLC; Gregory Santulli; and Aqua*
*Enterprise Inc. d/b/a Affordable Rx Meds*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify this 13th day of March 2025 that the foregoing Memorandum of Law in Support of Defendant Gregory Santulli's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction has been served on all counsel of record by electronically filing this document via the CM/ECF system, which will send notice thereof to all counsel of record.

<u>/s/Michael Blumenfeld</u>
Michael E. Blumenfeld