IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**GILEAD SCIENCES, INC.**, *et al.*,

 *Plaintiffs*,

v.

**MERITAIN HEALTH, INC.**, *et al.*,

 *Defendants*.

Case No. 1:24-cv-03566-JRR

**MEMORANDUM OPINION AND ORDER**[1]

This matter comes before the court on Defendant Meritain Health, Inc.'s ("Meritain") Motion to Stay Preliminary Injunction Pending Appeal. (ECF No. 271; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2025).

**I. BACKGROUND**

As discussed at length in its memorandum opinion issued June 24, 2025 (ECF No. 244), on December 10, 2024, Gilead initiated this action with the filing of its Complaint and motion for emergency and preliminary injunctive relief as to Counts I and II. (ECF Nos. 1, 11.) Gilead asserts six claims: Count I: Federal Trademark Infringement, 15 U.S.C. § 1114(1), against all Defendants; Count II: Federal Unfair Competition, 15 U.S.C. § 1125(a) against all Defendants; Count III: Unfair Competition under State Law against all Defendants; Count IV: Unjust Enrichment against the Quartet Defendants and Defendant Fetih Eczanesi; Count V: Importation of Goods Bearing Infringing Marks, 15 U.S.C. § 1124, against all Defendants; and Count VI: Civil Conspiracy against all Defendants.

---

[1] All terms defined in the court's memorandum opinion at ECF No. 244 shall have the same meanings here.

Following briefing and a hearing on the motion, by memorandum opinion and accompanying order, the court granted in part and denied in part the motion. (ECF Nos. 244, 245.) Specifically, the court held that Plaintiffs demonstrated a clear likelihood of success on their Lanham Act claims for trademark infringement and unfair competition, and issued a preliminary injunction that, *inter alia*, prohibits Defendants from:

1. Importing, advertising the importation of, or otherwise facilitating the importation of product bearing a Gilead Mark (as defined herein) into the United States from outside the United States . . . .

2. Purchasing, selling, distributing, marketing, manufacturing, offering for sale, or otherwise using in United States commerce, or facilitating the importation into the United States, any product bearing a Gilead Mark that has any of the following characteristics:

   a. The labeling is not exclusively in the English language;

   b. The packaging is not exclusively in the English language;

   c. The Patient Information document included with the product is not exclusively in the English language;

   d. The labeling does not bear either the words "Rx only" or the symbol;

   e. The labeling does not bear an NDC number;

   f. The labeling provides temperatures exclusively in degrees Celsius and does not also provide temperatures in degrees Fahrenheit;

   g. The Patient Information document included with the product does not bear the phrase "This Patient Information has been approved by the U.S. Food and Drug Administration"; or

   h. The labeling does include the phrase "GILEAD ACCESS PROGRAM."

   3. Removing from their premises, or discarding, destroying, transferring or disposing in any manner any information, computer files, electronic files, WhatsApp or text messages, business records (including but not limited to e-mail communications) or other documents relating to the Defendants' assets and operations or relating in any way to the purchase, sale, manufacture, offer for sale, distribution, negotiation, importation, advertisement, promotion, or receipt of any products bearing any of the Gilead Marks; and

   4. Assisting, aiding, or abetting any other person or entity in engaging in or performing any action prohibited herein [].

(ECF No. 245; the "PI.")

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 62(c), a preliminary injunction is not stayed following a notice of appeal "[u]nless the court orders otherwise." FED. R. CIV. P. 62(c); *see also* FED. R. APP. 8(a)(1) (providing that "[a] party must ordinarily move first in the district court for . . . an order suspending . . . an injunction while an appeal is pending"). Meritain, therefore, moves pursuant to Federal Rule of Civil Procedure 62(d) for the court to suspend and stay enforcement of the PI pending its appeal of the PI to the United States Court of Appeals for the Fourth Circuit.

The Supreme Court has set forth four factors to consider in determining whether to stay the order of preliminary injunction pending appeal: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).[2]

---

[2] The *Hilton* factors are similar to the *Winter* factors a plaintiff bears on a motion for preliminary injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (holding that "[a] plaintiff seeking a preliminary

The first two factors are "the most critical." *Nken v. Holder,* 556 U.S. 418, 434 (2009). Meritain bears the burden to demonstrate the factors weigh in favor of a stay. *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024) (instructing that applicant for stay bears "the burden . . . to show, among other things, a likelihood of success . . . and that the equities favor a stay").

### III. ANALYSIS

*A. Whether Meritain Makes a Strong Showing It is Likely to Succeed on Merits*

As set forth at length in the memorandum opinion at ECF No. 144, Gilead ably met its burden to demonstrate a clear showing of likelihood of success on the merits of their Lanham Act claims set forth in Counts I and II as against all Defendants, including Meritain. (*See* ECF No. 244 at pp. 24–32.) Having examined a robust record of testimony and documentary evidence following the two-day PI hearing, the court concluded:

> Based on the record before the court, Gilead has made a clear showing of a likelihood of success in demonstrating that Meritain knowingly and repeatedly provided its member employee data feed (Meritain's "source of truth" product with critical benefits coverage member data) to carve-out PBMs it was not merely aware were engaged in international drug sourcing, but to which it referred Meritain clients for precisely that purpose; and that without that Meritain data feed, carve-out PBMs could not service Meritain clients. Gilead has further clearly shown it will likely prove that Meritain had actual knowledge that – contrary to Meritain's written policy – it processed invoices for imported drugs (including Gilead-branded drugs) and that it engaged in deliberate, reflective internal decision-making among Meritain higher-ups to choose to continue to process invoices for international drugs rather than risk client alienation or negative market consequences.

(*Id.* pp. 31–32.)

---

injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest"); *Nken v. Holder,* 556 U.S. 418, 434 (2009) (observing that "[t]here is substantial overlap between" the factors governing issuance of a stay pending appeal and "the factors governing preliminary injunctions").

Meritain asserts a stay is appropriate where the applicable law "is somewhat unclear and the interests of the other parties and the public are not harmed substantially." (Motion at p. 2, quoting *Goldstein v. Miller*, 488 F. Supp. 156, 173 (D. Md. 1980), *aff'd,* 649 F.2d 863 (4th Cir. 1981).) In *Goldstein*, Judge Kauffman quoted at length from *Evans v. Buchanan,* a 1977 opinion out of the District of Delaware in which Judge Schwartz aptly described the strange position a court finds itself when, having just granted preliminary injunctive relief, is seemingly asked to conclude that it has erred in doing so by concluding the stay applicant will likely win on appeal. Judge Schwartz (and Judge Kauffman) explained that the stay standard does not, in fact, call on a judge effectively (or necessarily) to reverse herself:

> It seems illogical . . . to require that the court in effect conclude that its original decision in the matter was wrong before a stay can be issued. Rather, a stay may be appropriate in a case where the threat of irreparable injury to the applicant is immediate and substantial, the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear and the interests of the other parties and the public are not harmed substantially. This is not to say, however, that every time a case presents difficult questions of law a stay should be entered. As noted earlier, the four factors must be viewed together and the interest of the movant balanced against the interests of the other parties and the public. It is the duty of the court to exercise its discretion so that an equitable resolution is achieved.

488 F. Supp. at 173 (quoting *Evans v. Buchanan,* 435 F. Supp. 832, 844 (D. Del. 1977)).

Relying on this articulation of the standard, Meritain urges that the facts of this case – to include finding a TPA will likely be found liable for contributory trademark infringement – is a case of "first impression," and if the PI is allowed to stand, it will require Meritain "to restructure" how it does business resulting in nondescript "loss of business for Meritain." (Motion at p. 2.) It may well be that a TPA has not been held liable for contributory infringement, but here – as set forth in the court's memorandum opinion – the evidence favoring entry of the PI against Meritain

5

was multi-faceted and strong in the opinion of the court. Further, the court is unpersuaded that the applicable, relevant law is unclear or undeveloped. Neither is the court persuaded that it stretched or expanded the law beyond its ordinary footprint; or that Gilead asked it to do so. Were that the case, the court likely would have denied the PI motion as a bridge too far to satisfy the stringent standard presented by the *Winter* factors. At bottom, the court is not persuaded that its review of the evidence or application of the law deviated from the norm; or that the applicable area of law is unclear, underdeveloped, or presents a novel question.

    B. *Whether Meritain Will Be Irreparably Injured Absent a Stay*

Turning to the degree of harm to be suffered should the PI remain in place pending appeal, as mentioned above, Meritain urges "it will be forced to reconfigure its business model and its relationships with clients in ways that will be difficult to undo and is substantially likely to result in a loss of business." (Motion at p. 7.) But the PI requires only that Meritain not do what it has asserted all along is its internal formal policy; and Meritain's contention that the PI purports to hold Meritain responsible "for decisions made by independent entities" (Motion at p. 7) labors under a severely myopic view of the evidence and the court's detailed review and explanation of same. Further, non-specific business changes that will be "difficult to undo" do not equate to irreparable harm.

Meritain's suggestion that it will suffer irreparable harm "[s]hould Meritain take the even more dramatic step of prohibiting clients from working with any vendors that offer international sourcing programs" is speculative and, importantly, reads into the PI a condition that is neither present nor necessary to comply with its terms – a fact fairly reflected in Meritain's assertion that it "already has robust measures in place to ensure it does not participate in any international importation." (Motion at p. 9.) Finally, the court is unpersuaded that the PI will irreparably harm

Meritain because it prohibits Meritain from engaging in already unlawful aiding and abetting of internationally sourced Gilead branded drugs.

### C. Whether a Stay Will Substantially Injure Gilead

Gilead benefits from the statutory presumption of irreparable harm. The court further restates here the injury to Gilead in the absence of the PI as noted in the court's opinion at ECF No. 244:

> In addition to the aforementioned presumption, Gilead argues the threat of irreparable harm is to Gilead's reputation and goodwill as well as public health and safety, explaining that Defendants' "illegal importation of international Gilead medication" that is not FDA-approved, without FDA-approved labeling or patient information documents. (ECF No. 11-1 at pp. 46–47.) The court agrees and finds that Gilead has resoundingly demonstrated it will likely suffer irreparable harm absent preliminary injunctive relief – even in the absence of the above-described presumption. The risk of harm to Gilead's good will and reputation among the patient and healthcare providing relevant community is stark and acute. Further the court's above assessment that Gilead has made a strong showing that it will likely demonstrate actual or likely consumer confusion further anchors the court's conviction that Gilead's reputation as a provider of safe, lifesaving medicines may be irretrievably tarnished absent injunctive relief.

(ECF No. 244 at p. 54.)

### D. Public Interest

Meritain argues that the PI impairs "free competition" contrary to the "public's interest in economic choice and competition." (Motion at p. 10.) Without wading into discussion about whether illegal importation of internationally sourced drugs into the United States is what public policy has in mind by favoring a free market, the court finds the public is better served by ensuring patients digest unadulterated medications subject to the rigors of United States standards. Further, as the court set forth in its PI opinion regarding the high expense of some Gilead branded drugs: "While perhaps imperfect, there are – as all Defendants acknowledge – government and prescription assistance programs (also known as co-pay assistance programs) in place and in which

7

Gilead participates to help off-set the financial strain often associated with a course of medical care involving expensive drugs." (ECF No. 244 at p. 59.)

## IV. CONCLUSION

For the foregoing reasons, it is this 10th day of September 2025:

**ORDERED** that the Motion (ECF No. 271) shall be, and is hereby, **DENIED**.

/S/

_____
Julie R. Rubin
United States District Judge