# Exhibit 43

**Discipline Committee of the**
**Ontario College of Pharmacists**

**Citation: Ontario (College of Pharmacists) v. Pandya, 2024 ONCPDC 28**
**Date: 2024-10-03**

2024 ONCPDC 28 (CanLII)

**IN THE MATTER** of the *Regulated Health Professions Act, 1991*, S.O. 1991, c.18, as amended, and the regulations thereunder, as amended;

**AND IN THE MATTER** of the *Pharmacy Act, 1991*, S.O. 1991, c.36, as amended, and the regulations thereunder, as amended;

**AND IN THE MATTER** of the *Drug and Pharmacies Regulation Act*, R.S.O. 1990, c.H.4, as amended, and the regulations thereunder, as amended;

**AND IN THE MATTER** of allegations of proprietary/professional misconduct/incompetence before the Discipline Committee of the Ontario College of Pharmacists as referred by the Accreditation/Inquiries, Complaints and Reports Committee against **Kirteekumar Rameshchandra Pandya;**

| | | |
|---|---|---|
| **BETWEEN:** | ) | |
| | ) | |
| **ONTARIO COLLEGE** | ) | **Jean-Claude Killey** |
| **OF PHARMACISTS** | ) | For Ontario College of Pharmacists |
| | ) | |
| | ) | **Ashley Yoannou** |
| | ) | Attending for Ontario College of Pharmacists |
| **- and -** | ) | |
| | ) | |
| | ) | |
| **KIRTEEKUMAR RAMESHCHANDRA** | ) | **Gary Srebrolow** |
| **PANDYA** | ) | For the Registrant |
| **(REGISTRATION #88943)** | ) | |
| | ) | |
| | ) | **Kirteekumar Rameshchandra Pandya, R.Ph.** |
| | ) | In Attendance |
| **Panel Members:** | ) | |
| **Chris Aljawhiri, R.Ph., Chair** | ) | **Kathryn Ball** |
| **Jennifer Antunes, R.Ph.T., Elected Director** | ) | Independent Legal Counsel |
| **Negeen Foroughian, R.Ph.** | ) | |
| **Adrienne Katz, Public Director** | ) | **Heard: August 16, 2024** |
| | ) | **Decision Released: August 16, 2024** |
| | ) | **Written Decision Date: October 3, 2024** |

Pandya, Kirteekumar Rameshchandra                                   Page 2 of 25
Registration #88943

---

**DECISION AND REASONS FOR DECISION**

## I.  Introduction

[1]     This matter was heard by a Panel of the Discipline Committee on August 16, 2024, electronically by way of videoconference pursuant to the *Hearings in Tribunal Proceedings (Temporary Measures Act), 2020* and the *Discipline Committee Rules of Procedure*.

[2]     The Hearing proceeded by way of an Agreed Statement of Facts and a Joint Submission on Order and Costs proposed by Counsel for the College and Counsel for the Registrant[1].

## II.  The Allegations

[3]     Counsel for the College advised the Panel that the College was requesting leave to make amendments to paragraphs 1, 2, 3, 4, and 5 of the Notice of Hearing marked as Exhibit 1. Counsel for the Registrant advised that the College's request to amend the Notice of Hearing was on consent.

[4]     The Panel granted the College's request pursuant to s. 40 of the *Health Professions Procedural Code* as the amendments were of a minor and clerical nature, and in its opinion, it was just and equitable to do so.

[5]     The allegations against the Registrant as stated in the amended Notice of Hearing, dated May 27, 2024 (Exhibit 1), are as follows (the Tables referred to in the amended Notice of Hearing are not appended to this decision):

1.      He committed an act or acts of professional misconduct as provided by subsection 51(1)(c) of the Health Professions Procedural Code of the Pharmacy Act, 1991, S.O. 1991, c. 36, as amended, and paragraph 2 of subsection 2(1) of Ontario Regulation 130/17, as amended,[ and/or paragraph 2 of subsection 1 of Ontario Regulation 681/93, as amended,] in that, while engaged in the practice of pharmacy at Comber Drugstore Ltd (the "Pharmacy"), and/or as the Designated Manager of the Pharmacy and/or as a director and/or shareholder of the corporation operating the Pharmacy, he failed to maintain a standard of practice of the profession, with respect to the following incidents:

   a.      between about January 1, 2014 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs pursuant to co-signed or rewritten prescriptions for out-of-country patients, without taking and/or documenting reasonable steps to confirm whether an established

---

[1] In this decision, in accordance with By-Law no. 6, the term "Registrant" has the same meaning as "member" under s. 1 of the *Pharmacy Act, 1991*, and means "a member of the College".

2024 ONCPDC 28 (CanLII)

2024 ONCPDC 28 (CanLII)

physician-patient relationship existed between the prescribers and the patients;

b.　between about January 1, 2016 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs pursuant to ostensible prescriptions that were not valid, because the practitioner did not practice in the province in which they were licensed as required by s. C.01.001(1) of the *Food and Drug Regulations*, CRC, c 870, and he therefore contravened s. 155(1) of the *Drug and Pharmacies Regulation Act*, RSO 1990, c H.4, and s. C.01.041(1) of the *Food and Drug Regulations*, with respect to all prescriptions attributed to either Dr. C.S. or Dr. R.H. as prescriber;

c.　between about June 1, 2016 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs pursuant to refill authorizations deemed to be invalid because the prescriber, Dr. C.S., was no longer an authorized prescriber, without documenting any rationale for dispensing pursuant to the invalid authorizations;

d.　between about January 1, 2016 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs without ensuring that the prescriber's address was recorded on the prescription as required by s. 156(1)(d) of the *Drug and Pharmacies Regulation Act*, RSO 1990, c H.4, with respect to the prescriptions set out at Schedule A;

2.　He committed an act or acts of professional misconduct as provided by subsection 51(1)(c) of the Health Professions Procedural Code of the Pharmacy Act, 1991, S.O. 1991, c. 36, as amended, and paragraph 15 of subsection 2(1) of Ontario Regulation 130/17, as amended,[ and/or paragraph 13 of subsection 1 of Ontario Regulation 681/93, as amended,] in that, while engaged in the practice of pharmacy at Comber Drugstore Ltd (the "Pharmacy"), and/or as the Designated Manager of the Pharmacy and/or as a director and/or shareholder of the corporation operating the Pharmacy, he failed to keep records as required respecting his patients or practice, with respect to the following incidents:

a.　between about January 1, 2016 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs without ensuring that the prescriber's address was recorded on the prescription as required by s. 156(1)(d) of the *Drug and Pharmacies Regulation Act*, RSO 1990, c H.4, with respect to the prescriptions set out at Schedule A;

3.　He committed an act or acts of professional misconduct as provided by subsection 51(1)(c) of the Health Professions Procedural Code of the Pharmacy Act, 1991, S.O. 1991, c. 36, as amended, and paragraph 23 of subsection 2(1) of Ontario

Regulation 130/17, as amended,[ and/or paragraph 21 of subsection 1 of Ontario Regulation 681/93, as amended,] in that, while engaged in the practice of pharmacy at Comber Drugstore Ltd (the "Pharmacy"), and/or as the Designated Manager of the Pharmacy and/or as a director and/or shareholder of the corporation operating the Pharmacy, he contravened the Act, the Drug and Pharmacies Regulation Act, the Regulated Health Professions Act, 1991, the Narcotics Safety and Awareness Act, 2010, the Drug Interchangeability and Dispensing Fee Act or the Ontario Drug Benefit Act or the regulations under those Acts, with respect to the following incidents:

a. between about January 1, 2016 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs pursuant to ostensible prescriptions that were not valid, because the practitioner did not practice in the province in which they were licensed as required by s. C.01.001(1) of the *Food and Drug Regulations*, CRC, c 870, and he therefore contravened s. 155(1) of the *Drug and Pharmacies Regulation Act*, RSO 1990, c H.4, and s. C.01.041(1) of the *Food and Drug Regulations*, with respect to all prescriptions attributed to either Dr. C.S. or Dr. R.H. as prescriber;

b. between about January 1, 2016 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs without ensuring that the prescriber's address was recorded on the prescription as required by s. 156(1)(d) of the *Drug and Pharmacies Regulation Act*, RSO 1990, c H.4, with respect to the prescriptions set out at Schedule A;

4. He committed an act or acts of professional misconduct as provided by subsection 51(1)(c) of the Health Professions Procedural Code of the Pharmacy Act, 1991, S.O. 1991, c. 36, as amended, and paragraph 26 of subsection 2(1) of Ontario Regulation 130/17, as amended,[ and/or paragraph 22 of subsection 1 of Ontario Regulation 681/93, as amended,] in that, while engaged in the practice of pharmacy at Comber Drugstore Ltd (the "Pharmacy"), and/or as the Designated Manager of the Pharmacy and/or as a director and/or shareholder of the corporation operating the Pharmacy,  he contravened a federal, provincial or territorial law or municipal by-law with respect to the distribution, purchase, sale, or dispensing or prescribing of any drug or product, the administering of any substance, or the piercing of the dermis, with respect to the following incidents:

a. between about January 1, 2016 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs pursuant to ostensible prescriptions that were not valid, because the practitioner did not practice in the province in which they were licensed as required by s. C.01.001(1) of the *Food and Drug Regulations*, CRC, c 870, and he therefore contravened s. 155(1) of the *Drug and Pharmacies Regulation Act*, RSO 1990, c H.4, and s.

2024 ONCPDC 28 (CanLII)

C.01.041(1) of the *Food and Drug Regulations*, with respect to all prescriptions attributed to either Dr. C.S. or Dr. R.H. as prescriber;

5.    He committed an act or acts of professional misconduct as provided by subsection 51(1)(c) of the Health Professions Procedural Code of the Pharmacy Act, 1991, S.O. 1991, c. 36, as amended, and paragraph 39 of subsection 2(1) of Ontario Regulation 130/17, as amended,[ and/or paragraph 30 of subsection 1 of Ontario Regulation 681/93, as amended,] in that, while engaged in the practice of pharmacy at Comber Drugstore Ltd (the "Pharmacy"), and/or as the Designated Manager of the Pharmacy and/or as a director and/or shareholder of the corporation operating the Pharmacy, he engaged in conduct or performed an act relevant to the practice of pharmacy that, having regard to all the circumstances, would reasonably be regarded by members as disgraceful, dishonourable or unprofessional, with respect to the following incidents:

    a.    between about January 1, 2014 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs pursuant to co-signed or rewritten prescriptions for out-of-country patients, without taking and/or documenting reasonable steps to confirm whether an established physician-patient relationship existed between the prescribers and the patients;

    b.    between about January 1, 2016 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs pursuant to ostensible prescriptions that were not valid, because the practitioner did not practice in the province in which they were licensed as required by s. C.01.001(1) of the *Food and Drug Regulations*, CRC, c 870, and he therefore contravened s. 155(1) of the *Drug and Pharmacies Regulation Act*, RSO 1990, c H.4, and s. C.01.041(1) of the *Food and Drug Regulations*, with respect to all prescriptions attributed to either Dr. C.S. or Dr. R.H. as prescriber;

    c.    between about June 1, 2016 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs pursuant to refill authorizations deemed to be invalid because the prescriber, Dr. C.S., was no longer an authorized prescriber, without documenting any rationale for dispensing pursuant to the invalid authorizations;

    d.    between about January 1, 2016 and December 31, 2017, he dispensed (or he permitted, consented to or approved, expressly or impliedly, the dispensing of) prescription drugs without ensuring that the prescriber's address was recorded on the prescription as required by s. 156(1)(d) of the *Drug and Pharmacies Regulation Act*, RSO 1990, c H.4, with respect to the prescriptions set out at Schedule A.

2024 ONCPDC 28 (CanLII)

2024 ONCPDC 28 (CanLII)

## III. Registrant's Position

[6]     The Registrant admitted the allegations as set out in the amended Notice of Hearing.

[7]     With respect to the allegations set out in paragraph 5, the Registrant admitted that he engaged in conduct relevant to the practice of pharmacy that, having regard to all of the circumstances, would reasonably be regarded by members of the profession as dishonourable and unprofessional.

[8]     The Panel conducted an oral plea inquiry and was satisfied that the Registrant's admission was voluntary, informed and unequivocal.

## IV.  Agreed Statement of Facts

[9]     Counsel for the College advised the Panel that agreement had been reached on the facts and filed an Agreed Statement of Facts as Exhibit 2. The Agreed Statement of Facts provided as follows (the Tabs referred to in the Agreed Statement of Facts are not appended to this decision):

### A.      Allegations of professional misconduct

1.      The allegations of professional misconduct against Kirteekumar Pandya (the "Registrant") are set out in the Notice of Hearing dated May 27, 2024.

2.      In summary, the Notice of Hearing alleges that the Registrant engaged in professional misconduct between January 1, 2014, and December 31, 2017, in his capacity as the Designated Manager of, and/or a director and shareholder of the corporation that owned and operated, Comber Drugstore Ltd. (accreditation no. 33652) in Comber, Ontario (the "**Pharmacy**"), by participating in a program that filled prescriptions for out-of-country patients that were originally written by out-of-country physicians and then co-signed by Canadian (but not Ontario) physicians. This is alleged to have amounted to dispensing co-signed or rewritten prescriptions without taking steps to ensure that the co-signing prescribers had a relationship with the patient, and dispensing pursuant to invalid prescriptions, since the prescribers were not practising in the Canadian provinces in which they were licensed.

### B.      The Registrant's background

3.      The Registrant obtained his training in pharmacy from Sunderland Polytechnic university in the United Kingdom, graduating in 1980. He first registered with the Ontario College of Pharmacists (the "**College**") on July 31, 1986. The Registrant has no prior history of College Discipline Committee proceedings.

4.      The Registrant has been the Pharmacy's Designated Manager ("**DM**") from December 26, 2008 and remains so today. He is the sole director and one of two

2024 ONCPDC 28 (CanLII)

shareholders of Comber Drugstore Ltd., the corporation that operates the Pharmacy.

## C.    *The facts of the case*

5.    The concerns in this case arose from records that the College obtained from the execution of a search warrant at the offices of CanaRx Services Inc., a company suspected of operating a scheme to sell prescription drugs by retail from Ontario to US patients. Those records showed that certain Ontario pharmacies were accepting prescriptions provided to them by CanaRx for US patients, and dispensing drugs to those patients. The Pharmacy was one of those pharmacies.

### 1.    Dispensing drugs to US patients

6.    The Pharmacy's records show that it dispensed 874 prescriptions to CanaRx patients in 2016, and 1290 prescriptions to CanaRx patients in 2017. In 2017, this was 7.9% of all prescriptions dispensed at the Pharmacy, and 32.5% of the dollar value of all prescriptions dispensed.

7.    The records also contain a "Pharmacy Referral Agreement" between CanaRx and the Pharmacy which describes an arrangement whereby CanaRx would provide prescriptions to the Pharmacy for dispensing that were authorized by US prescribers for US patients. CanaRx would also provide the Pharmacy with corresponding prescriptions signed by a Canadian prescriber.

8.    The College collected paper prescription records for a sample of 10 CanaRx patients. The patients are identifiable as CanaRx patients from the prescription hardcopies, which list "CRX" as a third party payor.

9.    Dispensing drugs to a US resident is not, by itself, an act of professional misconduct. The main concern, when the patient resides out of the country, is with the quality of the prescription the patient has presented, and with the documented rationale for dispensing to a non-resident in the circumstances. Section C.01.001(1) of the *Food and Drug Regulations* defines "prescription" as an order given by a practitioner, and defines "practitioner" as a person who is entitled under the laws of a province to treat patients with a prescription drug, and is practising their profession in that province. Therefore, a prescription written by a physician licensed outside of Canada – or a prescription written by a physician licensed in a Canadian province but not practicing in that province – is not a valid prescription under the *Food and Drug Regulations*, and thus not a valid prescription for the purposes of dispensing drugs in Ontario.

10.    To get around this problem, it has happened in the past that Canadian-based physicians have agreed to "co-sign" or reissue prescriptions issued by US-based physicians for their US-based patients. This arguably renders the prescriptions superficially valid. The problem with such arrangements, though, is that the Canadian-based physicians have no physician-patient relationship with the patient,

2024 ONCPDC 28 (CanLII)

or if they do, have only a limited ability to assess the patient and the appropriateness of the prescription for that patient. For this reason, most provincial physician regulators have adopted policies to restrict co-signing prescriptions.

11.   The College has also adopted a policy relating to co-signing arrangements, which is titled "Prescriptions – Out of Country" and states that "Pharmacists shall not facilitate or enter into agreements with physicians for the purposes of cosigning or rewriting prescriptions for out-of-country patients."

12.   The records from the Pharmacy, the Pharmacy Referral Agreement, and the sample of Pharmacy records collected by the College, show that all of the CanaRx prescriptions dispensed by the Pharmacy were issued by one of two US-based physicians who were licensed in, but not practising in, Canadian provinces (and who are described in more detail below). All the patients had US addresses. The Pharmacy Referral Agreement describes the contractual arrangement under which these prescriptions were being dispensed, an arrangement that contravenes the College's policy that prohibits facilitating the co-signing or rewriting of prescriptions for out-of-country patients.

13.   By contravening the College's policy on out-of-country prescriptions and failing to take and/or document reasonable steps to confirm whether an established physician-patient relationship existed between the prescribers and the patients, the Registrant contravened the standards of practice of the profession, and engaged in dishonourable and unprofessional conduct.

### 2.   *Selling prescription drugs by retail without a valid prescription*

14.   All of the CanaRx prescriptions that the Pharmacy dispensed were issued by one of two physicians, Dr. Richard Heinricks or Dr. Charles Searle.

15.   As noted above, in order to be valid, a prescription must be issued by a prescriber who is both licensed in a Canadian jurisdiction, and is practicing in the jurisdiction in which they are licensed.

16.   Neither Dr. Heinricks nor Dr. Searle were practicing in the jurisdictions in which they were licensed in Canada, being Nova Scotia and Ontario.

17.   Dr. Heinricks' Nova Scotia licence was a "non-resident" licence. The Dr. Heinricks prescriptions that were retrieved showed a Florida fax number in the header, a Manitoba address, and a Minnesota phone number. Dr. Heinricks was not ever licensed in Manitoba. The prescriptions show no Nova Scotia contact information for Dr. Heinricks.

18.   Dr. Searle was licensed in Ontario until June 1, 2016, after which he resigned and was no longer a CPSO member. Among the sample of 6 prescriptions reviewed by the College that were issued by Dr. Searle, all of them bore a fax header with a

Florida area code. His profile in the Pharmacy's computer listed a Mississippi address and a British Columbia phone number.

19. Besides having no apparent place of practice in Ontario, there is an additional issue regarding Dr. Searle, which is that the Pharmacy dispensed 363 prescriptions under his authorization after he had resigned his registration, all of which were refills remaining on prescriptions issued by Dr. Searle before June 1, 2016. The College's policy on prescribers' change-of-status states that refills are presumptively invalid once the prescriber who issued them loses their authority to prescribe. A pharmacist may still dispense under the authority of such a refill "based on their assessment of the patient and the circumstances at hand in the best interest of the patient." The policy also notes that "regardless of the course of action chosen, the pharmacist is accountable for their decision and should effectively communicate their rationale to the patient. Documentation on the patient record should be completed in a timely manner and easily accessible for other pharmacy team members for continuity of care, and any necessary monitoring or follow-up by the pharmacist."

20. On the samples reviewed by the College, there was no documentation by the Registrant of his rationale for honouring the refills after the prescriber's resignation.

21. As a result, the Pharmacy sold drugs by retail pursuant to invalid prescriptions. This is true with respect to all of the prescriptions issued by Dr. Searle and Dr. Hendricks, which amounts to breaching the standards of practice of the profession, contravening s. 155(1) of the *Drug and Pharmacies Regulation Act* ("DPRA"), contravening s. C.01.041(1) of the Food and Drug Regulations, and dishonourable and unprofessional conduct. It was also contrary to the standards of practice of the profession, and dishonourable and unprofessional conduct, for the Registrant to dispense refills that had been authorized by a prescriber who was no longer licensed to practice, without recording a rationale for doing so.

### 3.    *Dispensing without recording a valid address on the prescription*

22. The Pharmacy records revealed some missing information that is required by s. 156 of the DPRA. In particular, several prescriptions issued by Dr. Heinricks and by Dr. Searle did not have an address identified for those prescribers, as required by s. 156(1)(d). The list of prescriptions for which no prescriber address was identified is set out in Schedule A to the Notice of Hearing dated May 27, 2024. This contravenes the standards of practice, amounts to failing to keep records as required, contravenes s. 156(1)(d) of the DPRA, and is dishonourable and unprofessional conduct.

23. Certain of the prescriptions issued by Dr. Heinricks had an address, but it was an address in Manitoba, where Dr. Heinricks has never been licensed. While there may be situations where a pharmacist's failure to notice a mismatch between a

2024 ONCPDC 28 (CanLII)

prescriber's address on a prescription and the jurisdiction where they are licensed might be seen as a minor oversight, in this case, the prescriber's licensing jurisdiction was a central feature of the scheme in which the Registrant was participating. He was aware that the prescriptions he was processing were being co-signed by a Canadian physician, for US patients, in order to ostensibly make them valid in Canada. In that context, the Manitoba address on the five Dr. Heinricks prescriptions was not a "valid" address within the meaning of s. 156(1)(d) of the DPRA, and the Registrant also contravened the standards of practice, failed to keep records as required, contravened s. 156(1)(d) of the DPRA, and engaged in dishonourable and unprofessional conduct with respect to these prescriptions.

**D.    *Relevant legislation and standards of practice***

24.    In addition to the legislation cited above, the Model Standards of Practice for Canadian Pharmacists were adopted by the College, effective January 2010, and are attached at **Tab A**. Among other things, the Model Standards require pharmacists to comply with all laws, regulations and policies relating to the practice of pharmacy, and to demonstrate personal and professional integrity.

**E.    *The Registrant's anticipated evidence***

25.    If the Registrant were to testify, his evidence would be that he relied on the Pharmacy Referral Agreement with CanaRx, which provided or promised that the prescriptions would be written by a medical practitioner who is active and licensed in Canada and that CanaRx would have the discretion to audit the standards for physician review of patient files to confirm they are in accordance with the regulations of Ontario and Canada. The Registrant acknowledges, however, that ultimately as the dispensing pharmacist, the Designated Manager, and a director and shareholder of the corporation that operated the Pharmacy, it was his responsibility to confirm that the prescriber had authority to write the prescriptions and that they were in accordance with applicable standards.

26.    The Registrant would also testify that this was his first complaint or investigation in almost 40 years of practice as a pharmacist. Further, the Registrant stopped working with CanaRx in early 2018 and did not fill any new prescriptions from CanaRx after. In addition, the Registrant would provide evidence to reflect that he has voluntarily engaged in remedial efforts, including a review of guidelines and standards of practice applicable to the issues, as well as completing continuing education courses, including the OCP e-learning module on Code of Ethics, and the OCP e-learning module on the DRPA.

**F.    *Admissions of professional misconduct***

27.    The Registrant admits that his conduct described above in this Agreed Statement of Facts amounts to professional misconduct, as alleged in paragraphs

2024 ONCPDC 28 (CanLII)

1 (a), (b), (c), (d)

2 (a)

3 (a), (b)

4 (a)

5 (a), (b), (c), (d)

of the Notice of Hearing dated May 27, 2024.

28.    With respect to paragraphs 5(a), (b), (c) and (d) of the Notice of Hearing, the parties submit that the Registrant's conduct is appropriately characterized as dishonourable and unprofessional.

### G.    *Acknowledgements*

29.    The Registrant understands the nature of the allegations that have been made against him and that by voluntarily admitting these facts, he waives his right to require the College to otherwise prove these facts.

30.    The Registrant understands that the Panel of the Discipline Committee can accept that the facts herein constitute professional misconduct, and in particular can accept his admissions that they constitute professional misconduct.

31.    The Registrant understands that the Panel of the Discipline Committee can make orders as a result of a finding of professional misconduct, as described in the Notice of Hearing dated May 27, 2024.

32.    The Registrant understands that if the panel makes a finding of professional misconduct, then the Panel's decision and its reasons, or a summary of its reasons, including the facts contained herein, and the Registrant's name will be published in the College's annual report, and may be published in the College's register, its official publication, *Pharmacy Connection*, as well as the Canadian Legal Information Institute ("CanLII") database.

33.    The Registrant acknowledges that he has had the opportunity to receive independent legal advice and was encouraged to do so by the College. He further acknowledges that he is entering into this Agreed Statement of Facts freely and voluntarily, without compulsion or duress, and after having had ample opportunity to consult with legal counsel if he so wished.

34.    The Registrant irrevocably acknowledges and agrees that all the facts in this Agreed Statement of Fact are true and accurate, and that these facts cannot be withdrawn under any circumstance.

2024 ONCPDC 28 (CanLII)

The Registrant and the College agree that this Agreed Statement of Facts may be signed in counterparts, and that electronic signatures will be accepted for the purposes of execution of the same.

[10]    In support of the Agreed Statement of Facts, the College made the following submissions.

[11]    The College submitted that the Registrant made admissions that he committed acts of professional misconduct, and that based on his admissions and the facts set out in the Agreed Statement of Facts, the Panel should make findings that the Registrant engaged in professional misconduct as alleged in the Notice of Hearing.

[12]    With respect to the allegations set out in paragraph 5 of the Notice of Hearing, the College submitted that the Registrant engaged in conduct or performed acts relevant to the practice of pharmacy that, having regard to all the circumstances, would reasonably be regarded by members of the profession to be dishonourable and unprofessional.

[13]    The College referred the Panel to paragraph 20 of the *Ontario (College of Pharmacists) v. Kula*, 2020 ONCPDC 5 [*Kula*] and to paragraph 17 of *Ontario (College of Pharmacists) v. Zaidi*, 2022 ONCPDC 4 [*Zaidi*] decisions, which set out the definitions of the terms disgraceful, dishonourable, and unprofessional conduct.

[14]    In particular, the College submitted that for misconduct to be characterized as unprofessional, the registrant must have demonstrated a serious or persistent disregard for his professional obligations. Misconduct that is characterized as dishonourable or disgraceful includes some element of moral failing in the registrant's conduct, through acts that bring shame and disrepute on the registrant and the profession. Misconduct that is viewed as disgraceful is more serious than misconduct characterized as dishonourable.

[15]    The College argued that, in this case, there is no evidence of dishonest conduct or intent by the Registrant. There was, however, a period of several years during which the Registrant processed a high volume of prescriptions for U.S. patients with whom he had no relationship with. The College argued that, while the terms of the Pharmacy Referral Agreement might have provided the Registrant with some comfort, the actual prescriptions and documentation provided to the Registrant contained ample indicators that should have caused the Registrant to realize that, regardless of what the Pharmacy Referral Agreement said, he was facilitating a co-signing arrangement contrary to the College's policy on out-of-country prescriptions.

[16]    Furthermore, the College contended that the prescriptions ostensibly co-signed by Canadian physicians were invalid because the physicians were not practicing in the provinces where they were licensed, and this was determinable from the documents themselves.

[17]    Considering the protracted nature of the conduct, and that it was conduct the Registrant should have realized was wrong, the College argued that the conduct is most appropriately characterized as dishonourable and unprofessional.

2024 ONCPDC 28 (CanLII)

[18]   The Panel asked the College about the wording of the allegations in the Notice of Hearing, and in particular, whether the wording of the allegations included the Registrant's role as a dispensing pharmacist in relation to the conduct admitted to in the Agreed Statement of Facts.

[19]   In response, the College submitted that the language of the allegations, in particular, "while engaged in the practice of pharmacy" refers to the Registrant's multiple roles at the Pharmacy, including Designated Manager, owner, shareholder, and dispensing pharmacist. The Registrant agreed with the College's submission on this point.

[20]   The Registrant joined the College in its submissions regarding professional misconduct and made the following submissions.

[21]   The Registrant submitted that, based on his admissions and the facts set out in the Agreed Statement of Facts, the Panel should make findings that he engaged in professional misconduct as alleged in the Notice of Hearing.

[22]   The Registrant submitted that, as set out in the Agreed Statement of Facts, the admitted misconduct is appropriately characterized as dishonourable and unprofessional.

[23]   The Registrant submitted that he understood the seriousness of the allegations. He apologized for his actions and looked forward to making improvements to prevent a future reoccurrence.

## V.  Decision on Findings

[24]   The Panel finds that the Registrant committed the acts of professional misconduct alleged in paragraphs 1, 2, 3, 4 and 5 of the amended Notice of Hearing.

[25]   With respect to the allegations set out in paragraph 5 of the amended Notice of Hearing, the Panel finds that the Registrant engaged in conduct or performed acts relevant to the practice of pharmacy that, having regard to all the circumstances, would reasonably be regarded by members of the profession to be dishonourable and unprofessional.

## VI.  Reasons for Findings

[26]   The Panel considered the Agreed Statement of Facts and decided that the evidence contained in that document, together with the Registrant's admissions, are sufficient for the College to discharge its onus and prove the allegations set out in the amended Notice of Hearing on a balance of probabilities.

[27]   With respect to the allegations in paragraph 5 of the amended Notice of Hearing, the Panel made a finding that the Registrant's conduct would reasonably be regarded by members of the profession to be dishonourable and unprofessional.

[28]    The Panel is of the view that the Registrant, in his capacity as a dispensing pharmacist, Designated Manager, director and pharmacy owner, failed to operate the Pharmacy in accordance with the relevant standards and legal requirements.

[29]    After reviewing the Agreed Statement of Facts, the Panel finds that the Registrant engaged in conduct that he knew or ought to have known was improper during the relevant time period.

[30]    The Registrant engaged in professional misconduct by participating in a program that filled prescriptions for out-of-country patients that were originally written by out-of-country physicians and then co-signed by Canadian, but not Ontario, physicians. This amounted to dispensing co-signed or rewritten prescriptions without ensuring that the co-signing prescribers had a relationship with the patient, and dispensing pursuant to invalid prescriptions, since the prescribers were not practising in the Canadian provinces in which they were licensed.

[31]    Additionally, the Registrant contravened the standards of practice of the profession by failing to take and/or document reasonable steps to confirm whether an established physician-patient relationship existed between the prescribers and patients. The Registrant also sold prescription drugs by retail without a valid prescription and dispensed refills authorized by a prescriber who was no longer licensed to practice, without recording a rationale for doing so.

[32]    The Panel finds that the Registrant knew or ought to have known that filling orders for prescription drugs without valid prescriptions or a physician–patient relationship was contrary to the College's policy and fell below the standards of the profession. Furthermore, the Panel finds the Registrant knew or ought to have known that dispensing prescription drugs to patients in the U.S. without a valid prescription fell below the standards of practice of the profession.

[33]    The Panel finds that the Registrant's conduct in this regard not only falls below the standards of practice of the profession, but also demonstrates an element of moral failing. For these reasons, the Panel finds the Registrant's conduct is appropriately characterized as dishonourable and unprofessional.

[34]    The Panel observed that the wording of the allegations in the Notice of Hearing did not include the Registrant's involvement as a dispensing pharmacist. However, we accept the parties' submissions respecting the wording of the allegations that "while engaged in the practice of pharmacy" refers to the Registrant's various roles at the Pharmacy including Designated Manager, owner, shareholder, and dispensing pharmacist.

[35]    In the future, it may be important for parties to consider the wording of the allegations in the Notice of Hearing in similar circumstances. If the registrant's involvement in the alleged misconduct is as a dispensing pharmacist, it would be helpful to the Panel if the wording of the allegations in the Notice of Hearing was clear and unambiguous respecting the registrant's alleged role.

2024 ONCPDC 28 (CanLII)

2024 ONCPDC 28 (CanLII)

## VII.  Joint Submission on Order

[36]    Counsel for the College advised the Panel that an agreement had been reached on the appropriate Order in this case and filed a Joint Submission on Order as Exhibit 3, which provided as follows:

1.    The Registrant shall appear before the Panel of the Discipline Committee to be reprimanded immediately following the hearing on August 16, 2024.

2.    The Registrar is directed to impose the following specified terms, conditions or limitations on the Registrant's Certificate of Registration:

   a.    The Registrant shall successfully complete within twelve (12) months of the date of the Order, a course with Gail E. Siskind Consulting Services, or another professional ethics consultant approved by the College, to address the professional misconduct arising from this matter, to be designed by the consultant. The following terms shall apply to the course:

      i.    The number of sessions shall be at the discretion of the consultant, but shall be no fewer than three;

      ii.    The manner of attendance at the sessions (e.g., in person, videoconference, etc.) is a matter to be discussed in advance between the Registrant and the consultant, but shall ultimately be at the discretion of the consultant;

      iii.    The Registrant shall be responsible for the cost of the course;

      iv.    The Registrant shall provide to the consultant the following documents, in advance of the course, to facilitate the design of the course:

         1)    A copy of the Notice of Hearing, the Agreed Statement of Facts, and this Joint Submission on Order; or

         2)    A copy of the Panel's Decision and Reasons, if available;

      v.    The Registrant shall direct the consultant to report the results of the ethics course to the College, which report shall be made no later than thirteen (13) months from the date this Order becomes final, to confirm that the Registrant completed the course to the consultant's satisfaction.

   b.    Beginning on September 16, 2024, the Registrant shall be prohibited from acting as a Designated Manager in any pharmacy until the Registrant has completed the remedial steps set out in paragraph 2a.

2024 ONCPDC 28 (CanLII)

3.      The Registrar shall suspend the Registrant's Certificate of Registration for a period of 3 months, with 1 month of the suspension to be remitted on condition that the Registrant completes the remedial training as specified in paragraph 2a above. The suspension shall commence on September 16, 2024, and shall continue until November 15, 2024, inclusive. If the remitted portion of the suspension is required to be served by the Registrant because he fails to complete the remedial requirements specified in paragraph 2a, that portion of the suspension shall commence on September 16, 2025, and shall continue until October 15, 2025, inclusive. If the time for completing the any of the remedial steps above is extended by the Registrar, the date on which the remitted portion of the suspension shall commence, if required, shall be adjusted accordingly.

**CLARITY NOTE**

4.      The Registrar is empowered, in her discretion, to grant a request for an extension of time to complete the remedial requirements set out in paragraph 2a, if the Registrar is of the view that it would be in the interests of fairness to do so and that it would not be contrary to the College's mandate to serve and protect the public interest. If the Registrar does so, the time for serving the remitted portion of the suspension, as set out in paragraph 3, will be adjusted accordingly.

5.      The requirement to complete the remedial requirements specified above in paragraph 2a, as terms, conditions or limitations on the Registrant's Certificate of Registration cannot be relieved by serving the remitted portion of the suspension referred to in paragraph 3 above.

**COSTS**

6.      The Registrant shall pay costs to the College in the amount of $10,000, with $2,500 to be paid on the date of this Order, and the balance to be paid within 12 months of the date of this Order.

[37]    In support of the Joint Submission on Order and Costs, the College made the following submissions.

[38]    The College relied on *R. v. Anthony-Cook*, 2016 SCC 43, [2016] 2 SCR 204 [*Anthony-Cook*], which sets out the test for rejecting a joint submission. The College noted that a joint submission by the parties should not be rejected lightly. More specifically, a joint submission should be rejected "...only where the proposed sentence would be viewed by reasonable and informed persons as a breakdown in the proper functioning of the justice system", as stated in *Anthony-Cook*, *ibid* at paras. 34 and 42.

[39]    The College submitted that the same principles on joint submissions set out in *Anthony-Cook*, *supra* have been adopted by administrative tribunals, including this College's Discipline Committee. See: *Ontario (College of Pharmacists) v. Sargyos*, 2019 ONCPDC 2 [*Sargyos*].

[40]     The College referred to the Ontario Divisional Court decision, *Timothy Edward Bradley v. Ontario College of Teachers*, 2021 ONSC 2303 [*Bradley*], which restated that the public interest test set out in *Anthony-Cook*, *supra* applies to disciplinary bodies.

[41]     The College submitted that the high threshold for rejecting or departing from the Joint Submission on Order and Costs has not been met in this case. That is, accepting the proposed order would not bring the administration of justice into disrepute or otherwise be contrary to the public interest.

[42]     The College submitted that the objectives of professional discipline orders include:

   a.     Protecting the public, which is the overriding purpose of professional discipline proceedings;

   b.     Deterrence (specific and general);

   c.     Rehabilitation and remediation; and

   d.     Maintaining public confidence in the ability of the College and its discipline process to govern the profession and the conduct of its registrants.

[43]     The College submitted that the Panel should consider the following factors in determining the Order that it should make:

   a.     The seriousness of the misconduct;

   b.     Any aggravating and mitigating circumstances;

   c.     The penalties that have been ordered in prior cases involving similar or comparable misconduct; and

   d.     The interests of the public, the profession, and the Registrant.

[44]     The College cited the following as aggravating factors in this case. The conduct involved a persistent failure of judgment rather than a momentary lapse, and it prioritized business interests over the Registrant's professional obligations and compliance with the law.

[45]     The College submitted the following as mitigating factors in this case. The Registrant accepted responsibility, provided evidence to the College, and agreed to accept a significant penalty and to undertake remedial steps to improve his practice.

[46]     The College argued that the proposed Order includes a reprimand and a suspension, both of which are aimed at deterrence, serving as a denunciation of the misconduct and a signal to the profession as a whole of the seriousness with which the Discipline Committee views such conduct.

2024 ONCPDC 28 (CanLII)

2024 ONCPDC 28 (CanLII)

[47]    With respect to the specified terms, conditions or limitations on the Registrant's Certificate of Registration included in the proposed Order, the College submitted:

   a.    That the Registrant will complete remedial training in the form of a customized course with Gail Siskind to improve his ethical practice, which will provide him with the opportunity to reflect on his conduct and rehabilitate his practice.

   b.    That the Registrant will be prohibited from acting as a Designated Manager in any pharmacy until he has completed the remedial training ordered.

[48]    The College submitted that the Registrant's successful participation in and completion of the ethical course will be required for him to continue to be eligible to act as a Designated Manager. This condition serves to protects the public and maintain public confidence.

[49]    According to the College, the terms, conditions and limitations included in the proposed Order are aimed at rehabilitation and public protection.

[50]    The College submitted that the proposed Order includes the suspension of the Registrant's Certificate of Registration for a period of three months, with one month to be remitted.

[51]    In their oral submissions, the College submitted that, prior to the hearing, the Registrant made efforts to retain a Designated Manager for the Pharmacy but was unsuccessful. The College referred to Exhibit 4 to support their position on this point.

[52]    The College argued that if the suspension and Designated Manager prohibition took effect on the day the Order became final, the Pharmacy would be forced to close. According to the College, the Pharmacy closure will have a negative impact on patients because the next closest pharmacy is 10 kilometers away. To avoid inconveniencing patients, the parties have agreed to have defer the suspension and Designated Manager prohibition for one month after the date of the Order. The College clarified that the suspension start date cannot be changed unless the Registrant requests to vary the Order.

[53]    In support of their position to defer the suspension's start date, the College noted that the misconduct in this case occurred several years ago, the misconduct has ceased, and there is no risk of it reoccurring.

[54]    The College relied on the following cases to demonstrate that the proposed Order in this case falls within the range of penalties that have been imposed for similar conduct: *Ontario (College of Pharmacists) v. Shah*, 2021 ONCPDC 5 [*Kaushil Shah*]; *Ontario (College of Pharmacists) v. Shah*, 2021 ONCPDC 16 [*Shirish Shah*]; and *Ontario (College of Pharmacists) v. Aziz*, 2020 ONCPDC 16 [*Aziz*].

[55]    According to the College, in the two *Shah, supra* cases, the conduct occurred at a pharmacy where one registrant was the Designated Manager and the other was the owner. The registrants initially denied the existence of contract documents related to their

program for filling U.S. prescriptions, but later produced those documents to the College, a factor which was not present in this case. The College argued that the absence of this factor justified the *Shah, supra* cases' slightly longer suspensions than the Registrant's proposed suspension in this case.

[56]     The College contended that the *Aziz, supra* case involves similar misconduct to that found in this case, but with the distinction that Mr. Aziz discussed his practice of filling prescriptions for U.S.-based patients with a College inspector, who reviewed the relevant documents and did not identify any concerns. According to the College, this justified Mr. Aziz's slightly shorter suspension compared to the proposed suspension for the Registrant in this case.

[57]     The College submitted that the Joint Submission on Order provides for an amount to be paid by the Registrant for costs that represents a portion of the legal and other costs incurred by the College to investigate and prosecute the case. This amount strikes an appropriate balance between the costs the Registrant must pay individually and the costs to be shared by all registrants of the profession to maintain the discipline process through the fees they pay to the College.

[58]     The Registrant joined the College in its submissions regarding professional misconduct and made the following submissions.

[59]     The Registrant submitted the following as mitigating factors in this case:

a.     He ceased to be involved in dispensing such out of country prescriptions, nor does he intend to do so in the future.

b.     This was the first complaint made against him in his almost 40 years of practice as a pharmacist.

c.     He has voluntarily engaged in remedial efforts, including reviewing the guidelines and standards of practice applicable to the issues, as well as completing continuing education courses, including the OCP e-learning module on the Code of Ethics, and the College's e-learning module on the *Drug and Pharmacies Regulation Act*.

d.     He has cooperated with the investigation and agreed to a resolution pursuant to the Agreed Statement of Facts and Joint Submission on Order, which has spared the College the cost of a hearing and spared witnesses from having to testify.

[60]     The Registrant acknowledged the seriousness of the allegations and agreed to the penalty terms, which meet all of the required discipline objectives.

[61]     The Registrant apologized for his actions and undertook to be aware of and adhere to all applicable laws, standards, rules and guidelines in the future.

2024 ONCPDC 28 (CanLII)

[62]   In his oral submissions, the Registrant submitted that the reason for the deferring the start of the suspension and Designated Manager prohibition was his inability to find a Designated Manager to operate the Pharmacy during his suspension. The Registrant claimed that there is no risk to the public and the conduct at issue has ceased. Given the circumstances, the deferral is appropriate.

[63]   When considering the case law, the Registrant argued that the *Aziz, ibid* case is the most similar to the case at hand, as it contains similar allegations and penalty terms. The Registrant argued that the *Shah, supra* cases are distinguishable from this case, as the misconduct in those cases was more protracted, and involved misleading the College.

## VIII.  The Order

[64]   The Panel accepts the Joint Submission on Order and accordingly makes an Order that:

1.   The Registrant shall appear before the Panel of the Discipline Committee to be reprimanded immediately following the hearing on August 16, 2024.

2.   The Registrar is directed to impose the following specified terms, conditions or limitations on the Registrant's Certificate of Registration:

   a.   The Registrant shall successfully complete within twelve (12) months of the date of the Order, a course with Gail E. Siskind Consulting Services, or another professional ethics consultant approved by the College, to address the professional misconduct arising from this matter, to be designed by the consultant. The following terms shall apply to the course:

      i.   The number of sessions shall be at the discretion of the consultant, but shall be no fewer than three;

      ii.   The manner of attendance at the sessions (e.g., in person, videoconference, etc.) is a matter to be discussed in advance between the Registrant and the consultant, but shall ultimately be at the discretion of the consultant;

      iii.   The Registrant shall be responsible for the cost of the course;

      iv.   The Registrant shall provide to the consultant the following documents, in advance of the course, to facilitate the design of the course:

         1)   A copy of the Notice of Hearing, the Agreed Statement of Facts, and this Joint Submission on Order; or

         2)   A copy of the Panel's Decision and Reasons, if available;

2024 ONCPDC 28 (CanLII)

v.    The Registrant shall direct the consultant to report the results of the ethics course to the College, which report shall be made no later than thirteen (13) months from the date this Order becomes final, to confirm that the Registrant completed the course to the consultant's satisfaction.

b.    Beginning on September 16, 2024, the Registrant shall be prohibited from acting as a Designated Manager in any pharmacy until the Registrant has completed the remedial steps set out in paragraph 2a.

3.    The Registrar shall suspend the Registrant's Certificate of Registration for a period of 3 months, with 1 month of the suspension to be remitted on condition that the Registrant completes the remedial training as specified in paragraph 2a above. The suspension shall commence on September 16, 2024, and shall continue until November 15, 2024, inclusive. If the remitted portion of the suspension is required to be served by the Registrant because he fails to complete the remedial requirements specified in paragraph 2a, that portion of the suspension shall commence on September 16, 2025, and shall continue until October 15, 2025, inclusive. If the time for completing the any of the remedial steps above is extended by the Registrar, the date on which the remitted portion of the suspension shall commence, if required, shall be adjusted accordingly.

**CLARITY NOTE**

4.    The Registrar is empowered, in her discretion, to grant a request for an extension of time to complete the remedial requirements set out in paragraph 2a, if the Registrar is of the view that it would be in the interests of fairness to do so and that it would not be contrary to the College's mandate to serve and protect the public interest. If the Registrar does so, the time for serving the remitted portion of the suspension, as set out in paragraph 3, will be adjusted accordingly.

5.    The requirement to complete the remedial requirements specified above in paragraph 2a, as terms, conditions or limitations on the Registrant's Certificate of Registration cannot be relieved by serving the remitted portion of the suspension referred to in paragraph 3 above.

**COSTS**

6.    The Registrant shall pay costs to the College in the amount of $10,000, with $2,500 to be paid on the date of this Order, and the balance to be paid within 12 months of the date of this Order.

## IX.  Reasons for Order

[65]    In determining the appropriate order in this case, we remind ourselves that the primary purpose of these proceedings is the College's overriding mandate to serve and protect the

public interest. In addition to the public interest, we must also consider the interests of the profession as a whole, as well as the particular circumstances of the Registrant.

[66]    The public must have confidence in the College's ability to effectively regulate the profession and govern its registrants in a manner that protects the public. We must always consider the extent to which the public requires protection from any sort of professional misconduct in the practice of pharmacy.

[67]    When the Panel considers the interests of the profession, we recognize that the Discipline Committee owes a duty to the profession at large to enforce and maintain the high standards of practice that the public expects of our registrants and that registrants expect of themselves. In each case, this Discipline Committee must consider the extent to which a message to the profession is necessary to make it clear that the conduct in question will not be tolerated.

[68]    Finally, we must consider the unique and particular circumstances of the Registrant, and the aggravating and mitigating factors involved in the case. The order must be appropriate, fair and reasonable in relation to the nature of the Panel's findings and the conduct that gave rise to those findings, as set out in the Agreed Statement of Facts.

[69]    In reaching our decision, the Panel considered that the Registrant and the College made a joint submission with respect to the proposed Order in this matter. The Panel is mindful of the legal test for rejecting a joint submission as set out in *Anthony-Cook*, *supra*, which requires the Panel to accept the joint submission unless accepting it would bring the administration of justice into disrepute or otherwise be contrary to the public interest. The Panel agreed that the joint submission did not meet that high threshold.

[70]    The Panel also considered the decision of the Ontario Divisional Court in *Bradley*, *supra,* at paragraph 14, which states:

> The public interest test in *Anthony-Cook* applies to disciplinary bodies. Any disciplinary body that rejects a joint submission on penalty must apply the pub[l]ic interest test and must show why the proposed penalty is so "unhinged" from the circumstances of the case that it must be rejected.

[71]    As the Ontario Divisional Court in *Bradley*, *supra*, makes clear, the test in *Anthony-Cook*, *supra* applies to disciplinary bodies, including this Panel of the Discipline Committee. It is also clear that the penalty proposed by the parties is not so "unhinged" from the circumstances of this case that it must be rejected.

[72]    The Panel finds that, in its totality, the Order addresses the seriousness of the misconduct in this case and takes into account the aggravating and mitigating factors that are particular to the Registrant. The Order serves and protects the public interest and maintains the public's confidence in the College's ability to self-regulate. The Panel is satisfied that the Order will deter the Registrant and the membership at large from engaging in this type of serious misconduct.

2024 ONCPDC 28 (CanLII)

[73]    The Panel notes that the fact that the parties are adverse in interest provides some assurance that the proposed Order is balanced.

[74]    In making this Order, the Panel considered the individual circumstances of the Registrant and the mitigating factors, including that the Registrant has accepted responsibility, and agreed to accept a significant penalty and to undertake remedial steps to improve his practice.

[75]    The Panel also considered the aggravating factors, including that the conduct involved a persistent failure of judgment rather than a momentary lapse, and it prioritized business interests over the Registrant's professional obligations and compliance with the law.

[76]    The Panel has ordered the Registrant to be reprimanded. The reprimand allows the Panel to express its strong disapproval of the Registrant's conduct. It represents a formal statement of disapproval that the conduct is unacceptable and will not be tolerated in the future. The reprimand serves as a specific deterrent for the Registrant, and a general deterrent for the membership by sending the message that such conduct will not be tolerated by this Discipline Committee.

[77]    The Panel has ordered specified terms, conditions or limitations to be imposed on the Registrant's Certificate of Registration. First, the Panel has ordered the Registrant to complete within twelve months of the Order becoming final, a customized ethics course with Gail E. Siskind or another professional ethics consultant approved by the College, to address the professional misconduct arising from this matter. The ethics course serves to rehabilitate and remediate the Registrant.

[78]    Second, the Panel has ordered that the Registrant shall be prohibited from acting as Designated Manager in any pharmacy until he has completed the remedial training ordered. The requirement to complete the ethics course as a condition to be eligible to act as a Designated Manager serves to rehabilitate the Registrant, protect the public and maintain public confidence in the College's ability to regulate its registrants.

[79]    The Panel has ordered the suspension of the Registrant's Certificate of Registration for a period of three months with one month to be remitted, provided that the Registrant successfully completes the ordered remediation. The suspension serves as a specific deterrent for the Registrant, and a general deterrent for the membership by sending the message that such conduct will not be tolerated by this Discipline Committee.

[80]    The Panel is satisfied that the length of the suspension falls within the range established in the case law presented: *Kaushil Shah*, *supra, Shirish Shah*, *supra* and *Aziz, supra*.

[81]    Given the circumstances, the Panel accepts the parties' rationale for deferring the start of the suspension period and the Designated Manager prohibition for one month from the date of the Order. This ensures that the Registrant has had the opportunity to hire a Designated Manager, while also avoiding the Pharmacy's closure, which would inconvenience patients.

2024 ONCPDC 28 (CanLII)

Pandya, Kirteekumar Rameshchandra                                        Page 24 of 25
Registration #88943

---

[82]    The costs component of the Order represents a portion of the College's expenses in investigating and prosecuting this case. The Panel is mindful that it is not intended to be punitive. However, the membership at large should not be responsible for all of the costs that the College incurs in relation to the misconduct of individual registrants. The Panel accepts that the quantum of $10,000 in costs is reasonable and appropriate in the circumstances of this case.

I, Chris Aljawhiri, R.Ph., sign this decision and reasons for the decision as Chair of this Discipline Panel and on behalf of the members of the Discipline Panel as listed below:


*"Chris Aljawhiri"*                                 October 3, 2024
Chair                                               Date


Panel Members

Jennifer Antunes, R.Ph.T., Elected Director
Negeen Foroughian, R.Ph.
Adrienne Katz, Public Director

2024 ONCPDC 28 (CanLII)

Pandya, Kirteekumar Rameshchandra
Registration #88943

Page 25 of 25

---

**TEXT OF ORAL REPRIMAND**

**Delivered on August 16, 2024 in the case of**

**Ontario College of Pharmacists**

**And**

**Kirteekumar Rameshchandra Pandya**

Mr. Pandya, the Panel has made findings of professional misconduct against you.

You have engaged in conduct that is viewed as dishonourable and unprofessional.

Pharmacy is a self-regulated profession. The practice of pharmacy is a privilege and it comes with significant obligations to the public, the profession and oneself.

Through your actions, you failed to fulfill your obligations as a dispensing pharmacist, Designated Manager, Director and pharmacy owner. You breached the standards of practice of the profession, regulations and pharmacy legislation.

The components of the Order are intended to provide you with an opportunity to rehabilitate your conduct with respect to your pharmacy practice. The Order is essential to protect the public, and, to deter you from engaging in this type conduct in the future.

We do not expect see you again before a panel of the Discipline Committee of the Ontario College of Pharmacists.

*This is not an official transcript*