IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GILEAD SCIENCES, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 24-CV-3566-JRR |
| vs. | ) | |
| | ) | |
| MERITAIN HEALTH, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THE QUARTET'S OPPOSITION TO PLAINTIFFS'
MOTION FOR ORDER TO SHOW CAUSE (LEAVE TO AMEND COMPLAINT)**

The Quartet respectfully opposes Gilead's proposal to more than double the number of defendants in this already complex case, after nearly a year of litigation, and nearly two years (possibly longer) since Gilead first learned of their activity. Most notably, Gilead states:

> The New Defendants were not part of the provision of Turkish BIKTARVY® to John Doe, but expedited discovery demonstrated that they have cooperated with the Original Defendants to import other Gilead-branded medicines, and also revealed the significant scale of their importation of Gilead-branded medicines.

ECF No. 280 at p. 9.[1] Simply put, Gilead fails to articulate any reason, beyond the liberal amendment standard, to include nine (9) additional Defendants in this action.

**1.      Gilead Has Violated the Parties' Stipulated Order at ECF No. 269.**

First, the Quartet would note that Gilead's motion practice is directly contrary to the parties' Stipulated Order regarding the procedure with which Gilead would seek leave to amend.

---

[1] Though Gilead's sentence states the New Defendants "cooperated with the Original Defendants to import" Gilead medications, Gilead has not alleged the New Defendants allegedly cooperated with the Quartet. Rather, it appears the sole connection is through ProAct. *See* ECF No. 280-1, ¶¶ 137-139, 179.

The Order specifically contemplated that Defendants would have sufficient time to brief the amendment:

> 4. Plaintiffs shall file their Motion for Leave to Amend the Complaint no later than September 30, 2025.
>
> 5. If, after reviewing Plaintiffs' Motion for Leave to Amend the Complaint, any Defendant intends to oppose that motion, they **shall** promptly meet and confer with Plaintiffs, and the parties **shall** jointly submit to the Court a proposed briefing schedule for any opposition and reply paper.

ECF No. 269 at ¶¶ 4-5 (emphasis added), *see also* ECF No. 270 (approving same).

All Defendants opposed Gilead's Motion for Leave to Amend the Complaint, yet rather than confer on a briefing schedule, Gilead disregarded the requirements of the Stipulated Order, sought "immediate injunctive relief," and "moved on an expedited basis for a show cause hearing why the following relief should not be granted: Leave for Gilead to file the proposed Amended Complaint." ECF No. 275. What is more, they demand such speed over a holiday weekend and days before Defendants' October 10, 2025, appellate brief deadline.

When the Quartet asked to confer on a schedule, requesting 30 days to oppose Gilead's motion, the reply was succinct: "Gilead does not agree." *See* Exhibit A, October 6, 2025, email of Tara Norris. This is not surprising, since Gilead did not confer with Defendants as to its request for expedited review. Instead of affording Defendants, according to the Stipulated Order, an interval to review the pleadings and develop a briefing schedule, the Court immediately ordered Defendants to serve an expedited response within a week. Doc. 288. Once again, Gilead's slothful prosecution and lack of planning have unfairly become the Court and Counsel's fire drill. This is, however, the first time that Gilead and the Court have abandoned a previously agreed framework.[2]

---

[2] Even if Gilead argues it has not violated the Order, it has, *at minimum*, unfairly sandbagged Defendants by representing a schedule would be negotiated. The Quartet would not have agreed to a stipulated order that contemplated an expedited briefing schedule. Nor would it have agreed

To briefly recap the history of the agreement: Gilead announced during an August 4, 2025, telephone hearing (after months of litigation and more than one year since learning of the alleged conduct that prompted suit) that it needed another two months to draft moving papers to add the newly proposed defendants.[3] The Court ordered the parties to submit a briefing schedule.

When negotiating the Stipulated Order, Defendants sought to ensure they would have ample time to respond to any Motion for Leave to Amend. Counsel for Gilead represented in an email:

> Regarding the schedule for the motion to amend, Gilead agrees to file any motion by September 30. However, given your point that Defendants don't know what'll be in the proposed amended complaint or whether you will want to oppose it, **we don't think it makes sense to negotiate further deadlines on that motion in the dark. Instead, we think we should tell the judge that we will discuss deadlines after you've seen it.** We've revised the proposed order accordingly.

Exhibit B, Emails between Counsel, p. 3 (emphasis added above) (highlighting added to exhibit).

In response, Defendants requested the following language:

> [Add] the following line to paragraph 5: "Defendants will be allocated at least 30 days for any opposition and reserve the right to seek additional time upon reviewing the contents of the motion.

*Id.* at p. 2. Gilead responded:

> We do not agree to your new language setting a 30-day floor to your time to oppose the motion to amend (if you choose to file an opposition). **If you'd like to request**

---

to provide Gilead *two months* to prepare a flurry of filings to which the Quartet would have only *one week* to respond. Importantly, Gilead never conferred regarding its motion to expedite. Gilead never even told the Quartet it would be claiming urgency as to the motion for leave to amend. Nor could it have, because it was seeking two months to prepare it. It would seem, again, that only once Gilead has leisurely planned and drafted is there any urgency. Expedition, according to Gilead, is a switch that operates only when convenient for Gilead and inconvenient for its opponents.

[3] Although Gilead's dilatory conduct and in suing the original defendants was egregious enough (and never adequately explained, even when the court inquired), they compound this delay with this new set of proposed defendants. Nor can Gilead claim that any need to await FDA or industry redress, justifies their dilatory conduct. Gilead provides absolutely no explanation or justification for this even more egregious delay in joining the new defendants.

> **30 days to oppose after the motion is filed, we can discuss it then.** I've revised the proposed order accordingly.

*Id.* (emphasis added). Finally, Defendants responded:

> We can discuss the opposition deadline at a later date, and reiterate that we'll likely request at least 30 days if we decide to oppose.

*Id.* at p. 1. Thus, Defendants requested a minimum of 30 days to respond to the Motion for Leave to Amend, and although Gilead did not agree to such timeframe, they did not reject it out of hand or deem it unreasonable. At no time did Gilead indicate that it would refuse to negotiate a briefing schedule, much less seek to *shorten* Defendants' response time. Nor is a shortened response time fair given the Stipulated Order requiring conferral on a briefing schedule for any Motion to Amend.

Nor surprisingly, when contacted to confer (pursuant to the stipulation), Gilead simply stated that it would not "agree" and did not participate in setting any stipulated schedule. Although the Quartet hereby requests the previously-broached thirty (30) days to prepare a proper opposition to the Motion for Leave to Amend, it does wish to offer several additional thoughts in the truncated time allowed.

**2.    There is No Urgency to Plaintiffs' Motion; Gilead Has Long Known of Allegations that CanaRX Imports Gilead Medication.**

Gilead's primary new defendant is CanaRX, who Gilead identified in its *original complaint*, meaning Gilead has had actual knowledge of CanaRX and allegations it imports Gilead medications since at least December 2024. CanaRX appears *eight times* in the original complaint. ECF No. 1, p. 13, n. 1 (citing CanaRX "warning letter"); p. 22, ¶ 103 (alleging and detailing relationship with ProAct); p. 24, ¶ 111 (alleging knowledge by Meritain of CanaRX). Moreover, Gilead included the "warning letter" dated February 26, 2019, as Exhibit 37 to their December 10, 2024, TRO motion. ECF No. 13-14. This strongly suggests that, if Gilead was really conducting

"brand protection" diligently over the last decade, as it claims, it knew of CanaRX and its activities as far back as 2019.

In fact, the CanaRX "warning letter" specifically lists Gilead drug "Truvada (HIV)" as appearing on CanaRX's medicine list (ECF No. 13-14 at p. 3) – a fact of which Gilead was likely aware of at or near the time the letter was issued. Yet, rather than naming CanaRX for as a defendant in the original Complaint for its alleged importation of Gilead medications, it elected not to do so.

In any event, Gilead requested discovery regarding CanaRX and received all information ahead of the PI hearing. Months later, in early August 2025, Gilead then requested and received two *additional* months to amend their complaint.[4] In short, Gilead cannot, and should not, be permitted to use their delay to purposefully disadvantage Defendants by denying them a full and fair opportunity to oppose leave to amend the complaint.

### 3.    Prejudice Caused by Gilead's Delay Also Warrants Denying Leave to Amend.

In the instant case, Gilead is not entitled to amendment as a matter of course. Fed. R. Civ. P. 15(a). Although Rule 15(a)(2) states courts should freely give leave when justice so requires, circumstances exist where justice requires denying leave to amend. The Fourth Circuit has held that "a request to amend should only be denied if one of three facts is present: 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Mayfield v. NASCAR*, 674 F.3d 369, 379 (4th Cir. 2012). According to the Supreme Court, undue delay is one such reason. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Mayfield* at 379. In *Mayfield,* the Fourth Circuit affirmed denial of leave to

---

[4] Although the transcript is not available, the Court even expressed surprise at the request given Gilead's previous requests for expediency.

amend "where the plaintiff had no excuse for failing to include additional allegations in the original complaint, the complaint was filed over two and one-half years prior, significant discovery had already been conducted, and there was no new evidence that could not have previously been discovered." *Hately v. Torrenzano*, 2017 U.S. Dist. LEXIS 60771 at *9 (E.D. Va. 2017) (summarizing holding of *Mayfield*).

The *Hately* court also denied a request for leave to amend. In that case, discovery was well underway and adding parties would require discovery to be reopened and would "probably lead to Defendant having to revisit discovery she had already completed." *Id.* at 11. The court likened the fact pattern to that in *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597 (4th Cir. 2010), in which case an amendment "would have changed the nature of the litigation and prejudice the defendant's 'ability to assess rationally its exposure to a damages award.'" *Id.* at *9-10; *see also Newton v. City of Atchison*, 2024 U.S. Dist. LEXIS 57771 at *3, *15-17 (D. Kan. March 29, 2024) (denying leave to add new parties in case where (1) "the parties spent eight months… jockeying to sort out the proper scope of the case" including motions for TRO and a preliminary injunction; (2) the plaintiff "was aware or should have been aware of the new defendants he now seeks to add at the time he filed his complaint"; (3) the new parties and claims do not arise out of the original facts in the complaint; and (4) both the old and new defendants would want to conduct discovery on the new allegations) *Newton* at *3, *15-17.

To quote the court in *Newton*: "allowing a late amendment that [the plaintiff] could have and should have included in his prior complaints would do nothing to further the 'just, speedy, and inexpensive determination' of this action." *Newton* at *17.

6

4.      **Gilead's Proposed Amendments Would Make Litigation Unwieldy and Unfairly Expensive for the Quartet.**

a.      **New Allegations Against Original Defendants**

Based upon the tracked changes in the proposed Amended Complaint, the proposed pleading significantly expands the allegations against Defendants, particularly the Quartet. Gilead has added numerous additional factual allegations against each of the original Defendants. These needlessly complicate a pleading that, if allowed, would be virtually double the limit set by L.R. 103. This, in turn, will require additional effort in preparing responsive pleadings and/or motion practice. These allegations will require additional effort by Defendants in motion practice and pleading. Gilead's request to exceed the page limit, presumably enacted to simplify litigation in the District of Maryland, illustrates how expanding the scope of this action complicates the action, and requires yet additional motions for exceptions District of Maryland rules designed to ensure the "just, speedy, and inexpensive determination" of litigation. Fed. R. Civ. P. 1.

b.      **Proposed Additional Defendants**

This already unwieldy case would be made more complex by adding new parties. Case management complications increase exponentially with the number of new parties. This action has already had case management issues. *See e.g.* Exhibit C, January 7, 2025, Email from Tara Norris (stating she would not consider the undersigned's calendar when scheduling depositions for witnesses the undersigned did not represent due to frustration with scheduling on the compressed timeframe demanded by Gilead). Four of the defendants are represented by the undersigned, resulting in only three client groups among the original defendants. Gilead's proposal to double the number of defendants will at least double the number of client groups.

Gilead objected to coordinating depositions with the undersigned when there were only three client groups (Exhibit C), it will likely resist coordination when there are at least six. Gilead

is likely to claim, when scheduling issues arise as to discovery targeted at the new Defendants or other matters, either that the Quartet is only marginally interested (as to depositions of the new Defendants' officers and employees, for example), or that there are too many parties to coordinate with everybody, and that the undersigned counsel's schedule should not be considered. If this is so, then Gilead should sue the new Defendants on a separate docket, as they have nothing to do with this particular controversy.

The action will become unmanageable. Further, the new defendants will be approximately a year behind the old defendant in the process, likely delaying trial. There will also be hundreds, if not a thousand or more, new docket entries that the undersigned must parse through to protect his clients' interests. "[U]ndue prejudice to the opposing party by virtue of allowance of the amendment" is a basis upon which to deny leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The addition of new defendants with new claims and defenses and counsel is likely to complicate this matter rather than promote judicial efficiency. The Quartet has previously broached the issue of severance, but the Court made it clear that it would not entertain severance at the preliminary injunction stage *See, e.g.,* ECF No. 78 at ¶ 1, ECF No. 99 at p. 2. It would make scant sense for this Court to expand this action to unmanageable girth, only to be faced with additional motion practice in the form of severance motions, with complexity begetting complexity.[5]

---

[5] It is possible Gilead seeks to transform this action into a new version of its oft-cited case, *Abbott Laboratories, et al. v. Adelphia Supply USA, et al.*, Case No. 1:15-cv-05826 in the United States District Court for the Eastern District of New York, (also handled by counsel for Gilead) which was filed October 9, 2015, amended to add hundreds of defendants, has 2,159 ECF documents, and remains open today.

Gilead's assertion that this case is in "the early stages" is belied by the record. The parties (mostly Gilead) have docketed 300 entries, not including subfilings, the total of which number into the thousands, in less than one year. The action was supposedly investigated by Gilead for ten months before filing.[6] The parties deposed seven witnesses and exchanged hundreds of thousands of pages of documents, incurring six-figure costs each. The discovery and briefing efforts in this action already surpass those in the entirety of a typical Federal action. And the parties have conducted a 2-day evidentiary hearing.

Gilead concedes the complexity of this case because it took 2 months to draft and file its proposed amended complaint. Gilead further admits that the new defendants were not involved in the specific conduct that gave rise to this case, i.e., John Doe's Biktarvy. Instead, Gilead offers only speculation about the new defendant's activities in this district as justification to further complicate and prolong this arduous action.

The undue complexity of the case is further underscored by Gilead's proposal to double the page limit of the Local Rule. Gilead does not demonstrate any "exceptional circumstance," as required by the Rule. In fact, the Motion for excess pages fails to mention, let alone address "exceptional circumstances." The only "exceptional circumstances" here – Gilead's fast/slow/fast/slow approach to litigation and its transparent attempt to shoehorn unrelated controversies together for tactical advantage – are not the type contemplated by the Rule. Although Court and counsel have not had occasion to address the pleadings themselves, it is difficult to see how Gilead even seriously attempted to follow Rule 8, which requires a "short and plain statement" that is "simple, concise, and direct." Further, Gilead's proposed pleading violates Rule 10,

---

[6] Either Gilead was dilatory, or this action is already far along and excessively complex, likely both.

requiring "numbered paragraphs, each limited as far as practicable to a single set of circumstances." *See* Proposed Am. Compl. ¶ 8 (filling nearly all of Page 7 and discussing numerous circumstances of various party and nonparty actors from Meritain and ProAct to patients to "a host of [unnamed] shady businesses" allegedly "in between.")

Gilead (barely) managed to follow the Local Rule page limit in its original complaint. It should not be allowed to double its page limit just to accommodate an otherwise unwieldy case.

As but one illustration of how amendment would create preposterous results, Gilead claims punitive damages of "no less than $25 million" per defendant. ECF No. 1, p. 41, see also Proposed Amended Complaint, Prayer for Relief, Section B. Gilead proposes to join nine (9) additional defendants to the seven (7) it had already sued, for a total of sixteen (16) defendants. With sixteen defendants at $25 million per, Gilead hopes to recover $400 million in punitive damages (over and above any actual damages or attorney fees that it claims but is not entitled to). Gilead's 2024 annual profits were only $480 million. See Gilead 10K, Page 38 ("Net income attributable to Gilead was $480 million"), available at: Gilead Sciences, Inc. - Financials - SEC Filings - SEC Filings Details Thus, Gilead proposes, through the addition of nine defendants here, to claim total damages approaching its total worldwide annual revenues, an outlandish claim.[7]

The Quartet respectfully submits that Gilead is not only forum shopping, but judge shopping. Gilead seeks leave to amend not because of a substantive connection to the State of Maryland or the alleged John Doe Biktarvy, but because the prior outcomes have aligned with their interests. This Court should deny the Motion for Leave to Amend outright. In the alternative,

---

[7] In many ways, the legal process thus far has been the punishment for the Quartet. Although it facilitated personal importation of only limited quantities of Gilead medicine, the fast-paced proceeding involving many parties has proven more costly than the amounts at stake (setting aside Gilead's dubious demand for punitive damages).

the Court should allot Defendants the originally broached 30 days to have an opportunity to fully

and fairly brief an opposition. In no event should the Court allow Gilead extra pages.

Date:    October 8, 2025.                                    Respectfully Submitted,

                                                            /s/Michael Beltran
                                                            Michael P Beltran, *pro hac vice*
                                                            Fla. Bar No. 0093184
                                                            Beltran Litigation, P.A.
                                                            4920 West Cypress St.
                                                            Suite 104 PMB 5089
                                                            Tampa, FL 33607
                                                            813-870-3073 (o)
                                                            mike@beltranlitigation.com

                                                            -and-

                                                            Michael E. Blumenfeld (AIS #9712160063)
                                                            NELSON MULLINS RILEY &
                                                            SCARBOROUGH LLP
                                                            100 S. Charles Street, Suite 1600
                                                            Baltimore, Maryland 21201
                                                            Phone: 443.392.9415
                                                            Fax: 410.392.9499
                                                            Michael.blumenfeld@nelsonmullins.com

                                                            -and-

                                                            Anastasia Wagner, *pro hac vice*
                                                            Nebraska Bar No. 22983
                                                            Law Office of Anastasia Wagner, LLC
                                                            15418 Weir St. #273
                                                            Omaha, NE 68137
                                                            T: (402) 578-2624
                                                            anastasia_wagner@outlook.com

                                                            *Attorneys for Rx Valet, LLC; Advanced*
                                                            *Pharmacy, LLC; Gregory Santulli; and*
                                                            *Aqua Enterprise Inc. d/b/a Affordable Rx*
                                                            *Meds*

## <u>CERTIFICATE OF SERVICE</u>

On the date listed above, I filed this document via CM/ECF, which served all counsel of record.

<u>/s/Michael Beltran</u>
Michael Beltran