IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **GILEAD SCIENCES, INC.,** *et al.*,<br><br>Plaintiffs<br><br>v.<br><br>**MERITAIN HEALTH, INC.,** *et al.*,<br><br>Defendants. | Case No. 1:24-cv-03566-JRR |

**MEMORANDUM OPINION AND ORDER**

On September 30, 2025, Plaintiffs ("Gilead") filed a Motion for Expedited Entry of Order to Show Cause (ECF No. 277), seeking, *inter alia*, leave to file an amended complaint and leave to file such amended complaint in excess of the Local Rules page limit.[1] (ECF Nos. 278, 280; Reply at 294.) Defendants Meritain and ProAct oppose neither request (ECF No. 290); the Quartet Defendants oppose both. (ECF No. 291.) The court has considered all papers; no hearing is necessary. (Loc. R. 105.6 D. Md. 2025.) This opinion and associated order pertain to Gilead's Motion only as to its request for leave to amend the operative complaint and to exceed the standard page limit with its proposed amended complaint. (ECF Nos. 277, 278, 280.)

**I.    Applicable Legal Standard and Court Rules**

**A.  Federal Rule of Civil Procedure 15**

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course" within 21 days of service, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1). Otherwise, "a

---

[1] Motion for Expedited Entry of Order to Show Cause at ECF No. 277.

party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Rule 15(a) counsels that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "The Supreme Court has emphasized that 'this mandate is to be heeded.'" *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"The Fourth Circuit's policy is 'to liberally allow amendment.'" *Lavin v. Safeco Ins. Co. of Am.*, No. SAG 22-1788, 2022 WL 17342051, at *1 (D. Md. Nov. 30, 2022) (quoting *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010)). Therefore, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson*, 785 F.2d at 509; *see Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 345 (D. Md. 2018) (noting that "[g]ranting leave to amend [] is the default under Rule 15"). A court is also permitted to deny as futile a request for leave to amend where the "proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)); *see In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) ("[I]n recent years, we have made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny.").

The Quartet Defendants do not argue grounds of futility; rather, their opposition is based chiefly on prejudice and, to a lesser extent, bad faith. The court addresses all factors below.

### B. Local Rule 103.1(d)

Local Rule 103.1(d) limits pleadings to forty (40) pages absent leave of court. Loc. R. 103.1(d) (D. Md. 2025.)

II.     <u>Analysis</u>

   A.  Leave to Amend

      *1. Prejudice*

"Prejudice is the weightiest factor, the absence thereof, 'though not alone determinative, will normally warrant granting leave to amend.'" *Oliver v. Dep't of Pub. Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 346 (D. Md. 2018), *aff'd sub nom. Oliver v. Bartholomew*, 785 F. App'x 166 (4th Cir. 2019) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). "Prejudice is 'often determined by the nature of the amendment and its timing.'" *Medline Indus., Inc. v. York Bldg. Prod. Co.*, 702 F. Supp. 3d 403, 408–09 (D. Md. 2023) (quoting *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006)).  As explained by the Fourth Circuit:

> A common example of a prejudicial amendment is one that "raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial."  An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.

*Laber*, 438 F.3d at 427 (citations omitted)); *see Medline Indus., Inc.*, 702 F. Supp. 3d at 408–09 (same).

This court has repeatedly held that "'the time, effort, and money . . . expended in litigating [a] case' do not constitute 'substantial prejudice' weighing against leave to amend." *Best v. Newrez LLC*, No. GJH-19-2331, 2020 WL 5513433, at *8 (D. Md. Sept. 11, 2020) (quoting *Class Produce Group, LLC v. Harleysville Worcester Ins. Co.*, No. ELH-16-3431, 2017 WL 2377105, at *9 (D. Md. May 31, 2017)); *see, e.g.*, *Terran Biosciences, Inc. v. Compass Pathfinder Ltd.*, No. CV ELH-22-1956, 2024 WL 449323, at *17 (D. Md. Feb. 6, 2024) (same); *Future Field Solutions, LLC v. Van Norstrand*, No. CV DKC 23-1301, 2023 WL 8934021, at *3 (D. Md. Dec. 27, 2023) (same); *see also All Weather, Inc. v. Optical Sci., Inc.*, 443 F. Supp. 3d 656, 664 (D. Md. 2020)

(noting how a party claimed that it had "'expended substantial resources in response to the Complaint,' but [could] point to no other prejudice from allowing the amendment, which comes before discovery and only purports to add new theories and correct and clarify the facts already alleged.").

The Quartet correctly asserts that the proposed amended complaint would make this action more complex due to the length of the proposed pleading and the number of defendants added to the case after about 10 months following its initiation in December 2024 (and almost two years following Gilead's notice of the John Doe incident). To be sure, the prospect of adding nine new defendants[2] will render the case more complex on the whole. But the court strains to see how that amounts to prejudice for the Quartet Defendants; rather, it merely presents standard-issue complex civil litigation with the concomitant court and counsel case management challenges. This type of extra burden on parties (and the court) is not Rule 15 prejudice.

As for the timing of the amendment, the court sees no prejudice there either. No answers have been filed; no scheduling order has been issued. All discovery that has been undertaken— while not insubstantial—has been preliminary, expedited discovery in furtherance of the court's ruling on the motion for preliminary injunction now on appeal. And only one responsive motion has been filed (by Defendant Santulli), which is no longer pending. The cases the Quartet cites in support of its prejudice argument are inapposite; those cases involve circumstances where the plaintiffs sought to add new claims (or reassert previously dismissed claims) against the defendants, or sought to add claims and/or defendants after the cases had materially progressed

---

[2] Three of the proposed new defendants are all CanaRx entities—CanaRx Services, Inc., CanaRx Group, Inc., and CRX International, Inc. The balance are four individuals and two entities: Giles Robert Howard and John Howard (both alleged directors of CanaRx Services), ElectRx and Health Solution, LLC, Jeffrey Dinsmore (alleged member and managing partner of ElectRx), ScriptSourcing, LLC, and Gary Becker (alleged founder, CEO, and sole member of ScriptSourcing). (ECF No. 280-1 ¶¶ 21–29.)

through discovery and other stages of litigation. As said above, despite the time that has passed since its initiation, this case is in the nascent stage of its lifespan. Further, the proposed amendment adds no new claims against any Defendant and presents no new legal theory of recovery.[3]

The Quartet adds further that the proposed amendment is not rooted in the John Doe incident that caused Gilead to alert the FDA and, later, to undertake its in-house investigation that led to this action, but that is neither here nor there. The John Doe incident may have revealed facts to Gilead that lead it to initiate this action, and perhaps the proposed defendants were not involved in John Doe's receipt of Turkish Biktarvy®, but whether by way of John Doe or another path of discovery, the pending and proposed claims do not rise or fall on how Gilead learned of the alleged business conduct about which it complains.

The Quartet next asserts that, given the passage of time since Gilead purportedly learned of the alleged grounds to sue its proposed additional defendants, no urgency exists to proceed on an "expedited" basis, as Gilead requests, for injunctive relief against the newly proposed defendants. But that has no bearing on whether the court should grant leave to amend the complaint; rather, that is an issue to address on the merits of Gilead's request for injunctive relief (and is more appropriately addressed by the new defendants, not the Quartet).

The Quartet spends a good deal of energy on its assertion that Gilead "violated" the stipulation regarding objection/response to Gilead's (at that time not-yet-filed) motion for leave to

---

[3] The Quartet adds to this aspect of its argument that the number of proposed defendants will present unwieldy case management issues warranting severance, which, the Quartet asserts, the court previously indicated it would not consider at the preliminary injunction stage. To be clear, the court expressed its uninterest in pursuing multiple injunction hearings *seriatim* because there was no efficiency to be had for anyone by proceeding in such a fashion. The court further reminded the Quartet Defendants (in response to their several comments as to their displeasure with the procedure ordered by the court) that no motion to sever was ever filed. A request for Rule 42 severance is not (and has never been) before the court and therefore would be premature for the court to consider. The parties are, as the court has said before, entitled to file whatever motions they feel are appropriate; further, the court is entitled, *sua sponte*, to consider Rule 42 trial severance, but that time is not now. The court is not persuaded that the number of defendants, and related case and trial management issues, present a reason to deny Gilead's motion seeking leave to amend; to the contrary, the Rules provide ample tools at the court's disposal to ensure as efficient a process as may be reasonably available, and the court will avail itself of same as appropriate.

amend; and Gilead replies on point. The Quartet further complains that Gilead's motion unnecessarily (nay, improperly) created a "fire drill" for Defendants (and the court). (ECF No. 291 at p. 2.) Preliminarily, the court appreciates that the Quartet takes the position that Gilead did not abide its stipulation obligations; and Gilead presents a very different set of facts. The court need not address this, as it has nothing whatsoever to do with the merits of the pending motion for leave; it bears mentioning however that no Defendant asked the court to extend the deadline to respond. Relatedly, the Quartet asserts that Gilead was not cooperative or flexible in scheduling PI-related expedited depositions, which, they assert, reflects poorly on Gilead's litigation conduct. Here, again, the court understands the Quartet to express frustration (and the court further appreciates that counsel exercise discretion as to what discovery matters rise to the level of requiring judicial intervention), but this simply does not raise a Rule 15 grounds for denial of the motion for leave to amend. That parties have discovery disputes along the way is to be expected; and here, again, the Federal and Local Rules outfit the court and the parties with helpful tools. The court is unpersuaded that what the Quartet complains of amounts to prejudice (or bad faith).

In sum, the court is unpersuaded that the Quartet will suffer prejudice if the court allows Gilead to file its proposed amended pleading.[4]

### 2. Bad Faith

"Bad faith is established 'when it appears that the plaintiff is using Rule 15 to make the

---

[4] The court notes here the Quartet's footnote 7 where they assert: "In many ways, the legal process thus far has been the punishment for the Quartet. Although it facilitated personal importation of only limited quantities of Gilead medicine, the fast-paced proceeding involving many parties has proven more costly than the amounts at stake (setting aside Gilead's dubious demand for punitive damages)." (ECF No. 291 at p. 10 n.7.) Again, the court finds, in accordance with binding precedent cited above, that litigation itself is not Rule 15 prejudice, which is not to say the court does not appreciate that litigation can be prohibitively expensive and is always undesirable. But the court strains to understand how the Quartet's experience of "fast-paced" injunction proceedings effects a prejudice such that Gilead should be disallowed from amending its complaint to add additional claims against new (and separate) defendants. The Quartet cannot be heard at once to complain that the court took up emergency and preliminary injunction proceedings on an expedited track (which is rather what it is required to do as a rule) and that considering Gilead's pending motion for injunctive relief against the proposed new defendants will cause such undue delay that it amounts to Rule 15 prejudice to the Quartet.

complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, [and] to present theories seriatim in an effort to avoid dismissal.'" *Carter v. SNC-Lavalin Constructors, Inc.*, No. CV DKC 17-3198, 2019 WL 918382, at *3 (D. Md. Feb. 25, 2019) (quoting *Minter v. Prime Equip.*, 451 F. 3d 1196, 1206 (10th Cir. 2006)). "Bad faith generally involves changing legal theories and the belated presentation of facts which the pleader was already aware of in an effort to delay ultimate resolution. *Id.*; *see also Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 265 (D. Md. 2022), *aff'd*, 97 F.4th 166 (4th Cir. 2024) (denying leave to amend upon finding that plaintiff's repeated amendments had "not been a good-faith effort to crystallize and pursue viable claims"); *Bioiberica Nebraska, Inc. v. Nutramax Mfg., Inc.*, No. 1:18-CV-03133-SAG, 2021 WL 242494, at *2 (D. Md. Jan. 25, 2021) (denying leave to amend because plaintiff "simply cannot be permitted to change its legal theories in perpetuity, serving only to unduly prolong this litigation.").

      The Quartet accuses Gilead of forum shopping and judge shopping—charging that Gilead seeks to amend its complaint only because the "prior outcomes have aligned with their interests" and adding: "This Court should deny the Motion for Leave to Amend outright" or allow the Quartet another 30 days to file another brief in opposition to the motion for leave to amend. (ECF No. 291 at pp. 10-11.) Gilead avers in its memorandum at ECF No. 280 that during expedited PI party and third-party discovery, it learned additional facts about Defendants and "their business partners" as well as other entities and individuals that form the basis for their newly asserted allegations and claims. That Gilead would use that information to amend its pending complaint to pursue the same claims based on the same complained-of conduct against additional (proposed) defendants in a case in an early procedural posture does not smack of judge shopping. Taken to its logical extension, if the Quartet's charge held water, any party in Gilead's position that won a PI or Rule

12 motion would be vulnerable to attack on ethics grounds for seeking to amend a complaint down the road. Further, to the extent the unethical practice of judge shopping casts a pall on judicial independence and impartiality, this court has never been shy about exercising its independent, impartial discretion to rule as the facts and law demand in this, or any, case. The court will not allow the Quartet 30 days to file another opposition. They said their piece. They offer no explanation why an additional 30 days is necessary for them to respond (again), especially considering the liberal standard under Rule 15, or what opposition bases they have not already fleshed out.

To the extent the Quartet asserts bad faith on the part of Gilead pertaining to Gilead's purported violation of the stipulated order at ECF No. 269 and PI-related discovery challenges, the court incorporates here its above discussion addressing these subjects.

### 3. Futility

Finally, leave to amend "should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510. A court may also deny as futile a request for leave to amend where the "proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)); *see In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) ("[I]n recent years, we have made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny.").

Wisely, the Quartet does not assert the proposed amendment is futile. And the court finds the proposed amended complaint is neither insufficient nor frivolous; and while the proposed pleading exceeds the standard page limit, Gilead appropriately seeks leave to exceed it. Further,

while the Quartet complains that the proposed amended pleading violates Rules 8 and 10, the court observes that a short and plain statement is relative to the complexity and numerosity of claims and parties. As such, the court is not persuaded the length or complexity of the proposed pleading violates the "requirements of the federal rules." *Katyle*, 637 F.3d at 471. As for the complained-of paragraph 8 of the proposed pleading, which the Quartet complains runs afoul of Rule 10's requirement that paragraphs be numbered and limited in scope, the court appreciates the Quartet's contention that Gilead's pleading could withstand a sharpened pencil; however, the court finds the proposed pleading a product of editorial choice not rule flouting.

### B. Local Rule Page Limit

In view of the complexity of the action, including number of claims and added proposed defendants, the court finds good cause to grant Gilead's request to exceed the page limit imposed by the court's Local Rules. The court includes in its assessment the Quartet's above-described assertions that the length of the proposed pleading makes a complex case even more complex and calls on Defendants (and the court) to do more work. Both are true, but neither outweighs the court's assessment that Gilead presents good cause to exceed the page limit to the extent of the proposed amended pleading.

### III. Conclusion and Order

For the foregoing reasons, it is this 12th day of October 2025,

**ORDERED** that, to the extent the Motion for Expedited Entry of Order to Show Cause (ECF No. 277), seeks leave to file an amended complaint, the Motion shall be, and is hereby, **GRANTED**; and further it is

**ORDERED** that, to the extent the Motion for Expedited Entry of Order to Show Cause (ECF No. 277), seeks leave to file an amended complaint in excess of the page limits under the

Local Rules, the Motion shall be, and is hereby, **GRANTED**; and further it is

**ORDERED** that Madam Clerk shall docket the proposed First Amended Complaint at ECF No. 280-1.

The court will address separately the other relief requested by the Motion for Expedited Entry of Order to Show Cause.[5]

Finally, the parties shall submit the briefing schedule referenced in the order at ECF No. 293 by 12:00PM, Friday, October 17, 2025.

/S/
_____
Julie R. Rubin
United States District Judge

---

[5] Based on Gilead's correspondence at ECF No. 289, the court considers Gilead's request for alternative service set forth in the Motion for Expedited Entry of Order to Show Cause (ECF Nos. 277, 279) withdrawn.